JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
NICHOLAS D. FRAM (State Bar No. 288293)
nicholas.fram@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Attorneys for LinkedIn Corporation

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LinkedIn Corporation,<br><br>  Plaintiff,<br><br> vs.<br><br>Does, 1 through 100 inclusive,<br><br>  Defendants. | Case No. 5:16-CV-04463-LHK-NMC<br><br>**PLAINTIFF LINKEDIN CORPORATION'S ADMINISTRATIVE REQUEST PURSUANT TO LOCAL RULE 7-11 FOR LEAVE TO SEEK EXPEDITED DISCOVERY PRIOR TO RULE 26 CONFERENCE** |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 3

III. ARGUMENT .................................................................................................................. 5

    A. Good Cause Exists Warranting Expedited Discovery .............................................. 5

        1. LinkedIn Can Identify The Doe Defendants With Sufficient Specificity ................................................................................................... 6

        2. LinkedIn Has Identified All Prior Steps it Has Taken to Identify the Doe Defendants ..................................................................................... 7

        3. LinkedIn Readily Would Withstand A Motion to Dismiss On At Least One of Its Claims ................................................................................ 7

        4. There Is A Reasonable Likelihood LinkedIn Will Identify the Doe Defendants ........................................................................................... 11

    B. Expedited Discovery Will Cause No Prejudice to Doe Defendants And Will Conserve Party and Judicial Resources ................................................................... 11

    C. LinkedIn Is Seeking Limited Discovery Relating To a Small Number of Doe Defendants ......................................................................................................... 12

IV. CONCLUSION ............................................................................................................. 13

-i-

CASE NO. 5:16-CV-04463-LHK-NMC
PL'S ADMIN REQUEST FOR LEAVE TO SEEK EXPED. DISC.

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Automattic Inc. v. Steiner*,
  82 F. Supp. 3d 1011, 1022 (N.D. Cal. 2015) ...................................................................10

*Boy Racer, Inc. v. Does 1–60*,
  2011 WL 3652521 (N.D. Cal. Aug. 19, 2011) ..................................................................13

*Braun v. Primary Distributor Doe No. 1*,
  2012 WL 6087179 (N.D. Cal. Dec. 6, 2012) ............................................................3, 6, 11

*Cottrell v. Unknown Corr. Officers, 1-10*,
  230 F.3d 1366 (9th Cir. 2000) ............................................................................................3

*Coughlin v. Rogers*,
  130 F.3d 1348 (9th Cir. 1997) ..........................................................................................13

*Couponcabin LLC v. Savings.com, Inc.*,
  No. 2016 WL 3181826 (N.D. Ind. June 8, 2016) ...............................................................8

*Craigslist Inc. v. 3Taps Inc.*,
  942 F. Supp. 2d 962 (N.D. Cal. 2013) ...............................................................................9

*Craigslist Inc. v. 3Taps Inc.*,
  964 F. Supp. 2d 1178 (N.D. Cal. 2013) .............................................................................8

*Craigslist, Inc. v. Naturemarket, Inc.*,
  694 F. Supp. 2d 1039 (N.D. Cal. 2010) .............................................................................9

*Dallas Buyers Club LLC v. Doe-69.181.52.57*,
  2016 WL 924953 (N.D. Cal. Mar. 11, 2016) .................................................................6, 7

*Digital Sin, Inc. v. Does 1–5698*,
  2011 WL 5362068 (N.D. Cal. Nov. 4, 2011) .....................................................................7

*Facebook, Inc. v.ConnectU LLC*,
  2007 WL 2326090 (N.D. Cal. Aug. 13, 2007) .................................................................10

*Facebook, Inc. v. Power Ventures, Inc.*,
  -- F.3d --, 2016 WL 3741956 (9th Cir. July 12, 2016) ......................................................8

*Facebook, Inc. v. Power Ventures, Inc.*,
  2009 WL 1299698 (N.D. Cal. May 11, 2009) ...................................................................9

*Gillespie v. Civiletti*,
  629 F.2d 637 (9th Cir. 1980) ..............................................................................................5

**Page(s)**

*League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*,
558 F.2d 914 (9th Cir. 1977)...................................................................................................13

*Liberty Media Holdings, LLC v. Does 1–62*,
2011 WL 1869923 (S.D. Cal. May 12, 2011) ............................................................................7

*Malibu Media, LLC v. John Does 1 through 64*,
2012 WL 4835317 (E.D. Cal. Oct. 10, 2012) ..........................................................................12

*MCGIP, LLC v. Does 1–149*,
2011 WL 3607666 (N.D. Cal. Aug. 15, 2011) ...........................................................................7

*NetApp, Inc. v. Nimble Storage, Inc.*,
41 F. Supp. 3d 816, 824-28 (N.D. Cal. 2014) ..........................................................................10

*New Sensations, Inc. v. Does 1-426*,
2012 WL 4675281 (N.D. Cal. Oct. 1, 2012) ..............................................................................7

*Quad Int'l, Inc. v. Doe*,
2013 WL 178141 (E.D. Cal. Jan. 16, 2013)................................................................................6

*Robert Diaz Assocs. Enters., Inc. v. Elete, Inc.*,
2004 WL 1087468 (S.D.N.Y. May 14, 2004)..........................................................................10

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
208 F.R.D. 273 (N.D. Cal. 2002) .....................................................................................3, 6, 11

*Solarbridge Techs., Inc. v. Doe*,
2010 WL 3419189 (N.D. Cal. Aug. 27, 2010).......................................................................2, 6

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
507 F. Supp. 2d 1096 (C.D. Cal. 2007) ......................................................................................9

*Ticketmaster LLC v. Designer Tickets & Tours, Inc.*,
2008 WL 649804 (C.D. Cal. Mar. 10, 2008) .............................................................................6

*Twitter, Inc. v. Skootle Corp.*,
2012 WL 2375486 (N.D. Cal. June 22, 2012) .........................................................................11

*UMG Recordings, Inc. v. Doe*,
2008 WL 4104214 (N.D. Cal. Sept. 3, 2008)...........................................................................12

*United States v. Christensen*,
-- F.3d --, 2015 WL 11120665 (9th Cir. Aug. 25, 2015) .........................................................10

*United States v. Lowson,*
2010 WL 9552416 (D.N.J. Oct. 12, 2010),................................................................................9

-iii-

CASE NO. 5:16-CV-04463-LHK-NMC
PL'S ADMIN REQUEST FOR LEAVE TO SEEK EXPED. DISC.

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*United States v. Nosal*,
    -- F.3d --, 2016 WL 3608752 (9th Cir. July 5, 2016) ................................................................. 8

*Zoosk Inc. v. Doe 1*,
    2010 WL 5115670 (N.D. Cal. Dec. 9, 2010) ............................................................................. 7

**FEDERAL STATUTES**

17 U.S.C. §§ 1201 et seq. ................................................................................................... 1, 5, 8, 9

18 U.S.C. §§ 1030, et seq. ...................................................................................................passim

**STATE STATUTES**

Cal. Penal Code §§ 502 et seq. ............................................................................................passim

**FEDERAL RULES**

Fed. R. Civ. P. 21 ............................................................................................................................ 13

Fed. R.Civ. P. 26(f) ........................................................................................................................ 12

-iv-

CASE NO. 5:16-CV-04463-LHK-NMC
PL'S ADMIN REQUEST FOR LEAVE TO SEEK EXPED. DISC.

Pursuant to Local Rule 7-11, Plaintiff LinkedIn Corporation ("LinkedIn") seeks an order allowing it to conduct expedited third-party discovery for the limited purpose of obtaining the names, current and former addresses, telephone numbers, e-mail addresses, activity logs, and/or other information (collectively "Identifying Information") that may be used to identify Doe Defendants 1-100 (the "Doe Defendants"). This Administrative Request is based upon the below Memorandum of Points and Authorities, the Declarations of Christopher McLean ("McLean Decl.") and Jonathan H. Blavin ("Blavin Decl.") filed concurrently herewith, the files and records of this action, and any oral argument on this matter.

## MEMORANDUM OF POINTS AND AUTHORITY

### I. INTRODUCTION

LinkedIn is the world's largest professional network with more than 450 million members in over 200 countries and territories around the globe. LinkedIn's mission is to connect the world's professionals to make them more productive and successful. Through its proprietary platform, LinkedIn allows its members to create, manage and share their professional histories and interests online.

During periods of time since December 2015, unknown persons and/or entities employing various automated software programs (often referred to as "bots") have extracted and copied data from many LinkedIn pages. These Doe Defendants have circumvented several technical access barriers employed by LinkedIn, and have also knowingly and intentionally violated various access and use restrictions in LinkedIn's User Agreement, which they agreed to abide by in registering fake LinkedIn member accounts. In so doing, they have violated an array of federal and state laws, including the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq. (the "CFAA"), California Penal Code § 502 et seq., and the Digital Millennium Copyright Act, 17 U.S.C. § 1201 et seq. (the "DMCA"), and have engaged in unlawful acts of breach of contract, misappropriation, and trespass.

The Doe Defendants' unlawful conduct has harmed and threatens the LinkedIn platform in several ways. First, their actions have violated the trust that LinkedIn members place in the company to protect their information. Their unauthorized scraping also imposed significant strain
-1-

CASE NO. 5:16-CV-04463-LHK-NMC
PL'S ADMIN REQUEST FOR LEAVE TO SEEK EXPED. DISC.

on LinkedIn's network servers, reducing LinkedIn's capacity to serve legitimate LinkedIn users, and caused LinkedIn to expend time and resources investigating and responding to their misconduct. Further, in aid of their illegal activities, the Doe Defendants created thousands of fake LinkedIn profiles that polluted the LinkedIn user environment.

LinkedIn has responded swiftly to the Doe Defendants' activities, including by implementing additional technical barriers to the LinkedIn website to protect against mass scraping and by promptly disabling fake member profiles. In addition to these measures, and to ensure that future incidents do not occur, LinkedIn brings this action to identify the Doe Defendants and to obtain permanent injunctive relief halting their unlawful conduct. The Doe Defendants' activities, if not enjoined, threaten ongoing and irreparable harm to LinkedIn, including to its reputation and substantial consumer goodwill. LinkedIn further is entitled to its actual damages, statutory damages, and/or exemplary damages as a result of the Doe Defendants' misconduct.

The Doe Defendants have hidden their identities and contact details through their use of a highly coordinated and automated network of computers (a "botnet") distributed across dozens of Internet Service Providers ("ISPs") and networks, and many thousands of Internet Protocol ("IP") addresses.[1] These ISPs and networks span the range of local, regional, and national providers in this country and abroad. They possess the Identifying Information but, consistent with the law and their own policies, generally will only produce this information if served with subpoenas. *See, e.g.*, *Solarbridge Techs., Inc. v. Doe*, 2010 WL 3419189, at *2 (N.D. Cal. Aug. 27, 2010) (in CFAA and § 502 action, noting that an "internet service provider ["ISP"]… generally do[es] not divulge customer information without a subpoena or other legal authorization" and granting plaintiff permission to subpoena ISP for information identifying Doe defendant). As a result, despite diligent investigation, LinkedIn has been unable to locate information sufficient to enable it to personally name and serve the Doe Defendants.

---

[1] An IP address in this context is a numerical label assigned to each access point to the Internet.

-2-

CASE NO. 5:16-CV-04463-LHK-NMC
PL'S ADMIN REQUEST FOR LEAVE TO SEEK EXPED. DISC.

The Court may authorize pre-conference discovery for "good cause," meaning that the need for discovery outweighs any prejudice to the entity from whom the discovery is sought. *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002); *accord Cottrell v. Unknown Corr. Officers, 1-10*, 230 F.3d 1366 (9th Cir. 2000) ("the plaintiff should be given the opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds" (quotation marks omitted)). In cases such as this one, where the defendants' unlawful conduct is shielded by the anonymity of the Internet, courts consistently find that good cause exists for expedited discovery to enable the plaintiff to serve subpoenas on third-party service providers for the purpose of identifying the Doe defendants. *See, e.g.*, *Braun v. Primary Distributor Doe No. 1*, 2012 WL 6087179, at *1-2 (N.D. Cal. Dec. 6, 2012).

Good cause exists to grant expedited discovery in this case because: (1) LinkedIn can identify the missing parties with specificity; (2) LinkedIn has identified all previous steps taken to locate the unidentified defendants; (3) LinkedIn's suit could withstand a motion to dismiss; and (4) a reasonable likelihood exists that LinkedIn will identify the defendants through service of discovery on certain known ISPs and networks. In addition, the Doe Defendants will suffer no prejudice as a result of service of the discovery, and judicial efficiency weighs in favor of LinkedIn identifying the Doe Defendants without delay. Accordingly, the Court should grant LinkedIn's motion and allow LinkedIn to conduct immediate expedited third-party discovery to obtain the Identifying Information.

## II. BACKGROUND

LinkedIn works hard to protect the integrity and security of its network and systems. Among other things, it employs an array of technological safeguards and barriers designed to prevent data scrapers, bots, and other automated systems from accessing and copying data on LinkedIn's site on a large scale. The Doe Defendants circumvented several layers of technical barriers employed by LinkedIn to protect its site in order to wrongfully extract and copy data from many LinkedIn pages. *See* McLean Decl. ¶ 6. LinkedIn's User Agreement, to which prospective members must agree before joining, also prohibits, *inter alia*, "[u]s[ing] … automated software,

-3-

CASE NO. 5:16-CV-04463-LHK-NMC
PL'S ADMIN REQUEST FOR LEAVE TO SEEK EXPED. DISC.

devices, scripts robots, other means or processes to access" and "'scrape'" the LinkedIn website, and similarly, "[s]crap[ing] or copy[ing] profiles and information of others" from LinkedIn's site through "crawlers, browser plugins and add-ons, and any other technology." McLean Decl., Ex. A, § 8.2 at p. 5. Despite agreeing to the User Agreement, *id*. at ¶ 8, the Doe Defendants have engaged in extensive data scraping on LinkedIn's website, in flagrant violation of this and similar access and use restrictions.

LinkedIn conducted an extensive investigation of the Doe Defendants' actions. *Id*. at ¶¶ 6, 9-10. In the course of its investigation, it compiled spreadsheets tracking the IP addresses used by the Doe Defendants. *Id*. at ¶ 9. Based upon its investigation and analysis, LinkedIn has concluded that these Doe Defendants are engaged in automated and coordinated data scraping activities on the LinkedIn site. *Id*. at ¶¶ 6, 11.

An ISP or network provider maintains a log of a set of IP address allocations. *Id*. at ¶ 9. Based on the Doe Defendants' IP addresses, LinkedIn determined that the Doe Defendants accessed LinkedIn through a highly coordinated and automated network of computers distributed across dozens of ISPs and networks, and many thousands of IP addresses. *Id*. at ¶¶ 6, 8, 10, 12. These ISPs and networks span the range of local, regional, and national providers in this country and abroad. *Id*. at ¶¶ 9-10. In addition, the Doe Defendants engaged in some of their scraping activity through manipulating a "whitelisted" third-party cloud service provider, from which LinkedIn servers were programmed to permit higher volumes of server requests. *Id*. at ¶ 7.

Once provided with the IP addresses that LinkedIn has collected, in addition to the date and time of the Doe Defendants' access to LinkedIn's site, the identified ISPs and networks can quickly and readily identify the computers and particular accounts associated with these IP addresses, including the names, current and former addresses, telephone numbers, e-mail addresses, activity logs, and/or other information associated with the account using a given IP address. *Id*. at ¶ 11. LinkedIn has no means to obtain this information other than through the ISPs or networks. *Id*.

Because the Doe Defendants were utilizing many different computers to run their automated programs, there are thousands of IP addresses associated with their activities. *Id*. at ¶¶

-4-

CASE NO. 5:16-CV-04463-LHK-NMC
PL'S ADMIN REQUEST FOR LEAVE TO SEEK EXPED. DISC.

8, 12. Exhibit B to the McLean Declaration identifies certain IP addresses and ISPs and networks through which the Doe Defendants have concentrated their coordinated scraping events, i.e., these ISPs and networks have some of the highest number of repeated access attempts to the LinkedIn website during the scraping events. *Id*. at ¶ 12 & Ex. B. Notwithstanding the thousands of IP addresses associated with the Doe Defendants' activities, LinkedIn believes that the coordinated scraping activity is being directed by a small number of Doe Defendants, given that LinkedIn observed that these IP addresses accessed LinkedIn's network over the same brief periods of time and engaged in the same patterns of activity. *Id*. at ¶ 13. LinkedIn believes that the Doe Defendants are likely to be corporate or business entities that have engaged in their data scraping activities in an attempt to establish or enable businesses that would make commercial use of data obtained from LinkedIn. *Id*.

On August 8, 2016, LinkedIn filed a complaint against the Doe Defendants alleging various claims for relief, including for violation of the CFAA, 18 U.S.C. §§ 1030, *et seq*., California Penal Code §§ 502 *et seq*., and the DMCA, 17 U.S.C. §§ 1201 *et seq*., and for unlawful acts of breach of contract, misappropriation, and trespass. *See* Dkt. No. 1. Despite its diligent investigation and research to discover information sufficient to name the Doe Defendants in the Complaint and to serve them, LinkedIn has been unable to obtain such information and to accomplish service on the Doe Defendants.

## III. ARGUMENT

### A. Good Cause Exists Warranting Expedited Discovery

The Ninth Circuit has recognized that plaintiffs should be given an opportunity, through early discovery, to ascertain the identity of unknown defendants where they could not be identified prior to the filing of a complaint. *See, e.g.*, *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

"To determine whether there is 'good cause' to permit expedited discovery to identify anonymous internet user doe defendants, courts consider whether: (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous

-5-

CASE NO. 5:16-CV-04463-LHK-NMC
PL'S ADMIN REQUEST FOR LEAVE TO SEEK EXPED. DISC.

steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible." *Braun*, 2012 WL 6087179, at *1-2; *accord Dallas Buyers Club LLC v. Doe-69.181.52.57*, 2016 WL 924953, at *2 (N.D. Cal. Mar. 11, 2016); *see also Semitool*, 208 F.R.D. at 276 (examining prejudice and court's interest in expediting litigation as elements of good cause).

Courts repeatedly have found good cause warranting expedited discovery in similar actions against Doe defendants alleging violations of the CFAA, § 502, and related statutes. *See, e.g.*, *Solarbridge Techs*, 2010 WL 3419189, at *2 (plaintiff's "action would likely withstand a motion to dismiss, as it appears to have sufficiently alleged claims for violations of the CFAA and California Penal Code § 502(c) as well as statutory and common law trade secret misappropriation and unfair competition" and plaintiff "has shown that there is a reasonable likelihood that its requested discovery will lead to information to identify Defendant and make service on Defendant possible"); *Ticketmaster LLC v. Designer Tickets & Tours, Inc.,* 2008 WL 649804, at *1 (C.D. Cal. Mar. 10, 2008) (noting that "Ticketmaster filed suit against Doe Defendants for breach of contract, violation of the Computer Fraud and Abuse Act, Violation of California Penal Code § 502, and fraud" and "[a]fter expedited discovery," filed amended complaint "naming Defendants"). Here, good cause also exists to allow the expedited discovery.

### 1. LinkedIn Can Identify The Doe Defendants With Sufficient Specificity

First, LinkedIn has identified exact dates and times of the data scraping events as well as IP addresses used by the Doe Defendants during those times. *See* McLean Decl. at ¶¶ 9-12 & Ex. B. In so doing, LinkedIn has identified the Doe Defendants with sufficient specificity and established that the Doe Defendants are real person or entities subject to suit in federal court. *See Braun*, 2012 WL 6087179, at *2 ("IP addresses" resulting in "Defendants' names, addresses, e-mail addresses, and other identifying information" from ISP are "sufficient information demonstrating that the Defendants are real persons or entities who may be sued in federal court." (citations omitted)); *see also, e.g.*, *Quad Int'l, Inc. v. Doe*, 2013 WL 178141, at *2 (E.D. Cal. Jan.

-6-

CASE NO. 5:16-CV-04463-LHK-NMC
PL'S ADMIN REQUEST FOR LEAVE TO SEEK EXPED. DISC.

16, 2013) (same); *MCGIP, LLC v. Does 1–149*, 2011 WL 3607666, at *2 (N.D. Cal. Aug. 15, 2011) (same); *Zoosk Inc. v. Doe 1*, 2010 WL 5115670, at *2 (N.D. Cal. Dec. 9, 2010) (same).

### 2. LinkedIn Has Identified All Prior Steps it Has Taken to Identify the Doe Defendants

Second, LinkedIn has identified the steps it has taken to identify the Doe Defendants: LinkedIn conducted an extensive investigation of the Doe Defendants' misconduct and determined the Doe Defendants improperly accessed LinkedIn through certain and identifiable ISPs and networks. *See* McLean Decl. at ¶¶ 9-10. LinkedIn has no means to obtain the Identifying Information other than through these ISPs and networks, *id*. at ¶ 11, which will not identify the Doe Defendants except through service of a subpoena. *See Dallas Buyers Club*, 2016 WL 924953, at *3 (noting that an "IP address alone is not sufficient for Plaintiff to identify the Doe Defendant, and Plaintiff has no other means to identify the Doe Defendant besides [the ISP's] record"); *see Digital Sin, Inc. v. Does 1–5698*, 2011 WL 5362068, at *2 (N.D. Cal. Nov. 4, 2011) (granting leave for expedited discovery when plaintiff knew IP addresses and associated ISPs).

### 3. LinkedIn Readily Would Withstand A Motion to Dismiss On At Least One of Its Claims

Third, LinkedIn readily would withstand a challenge to the sufficiency of its pleading, which requires LinkedIn to have "alleged sufficient facts to withstand a motion to dismiss on at least one of the claims alleged." *New Sensations, Inc. v. Does 1-426*, 2012 WL 4675281, at *6 (N.D. Cal. Oct. 1, 2012); *see also Liberty Media Holdings, LLC v. Does 1–62,* 2011 WL 1869923, at *4 (S.D. Cal. May 12, 2011) (granting plaintiff's motion requesting immediate discovery where plaintiff "alleged sufficient facts to withstand a motion to dismiss on at least one claim asserted in this lawsuit").

As alleged in the Complaint, utilizing a highly coordinated and automated network of computers distributed across dozens of ISPs and networks, and many thousands of IP addresses, the Doe Defendants scraped data from LinkedIn pages by intentionally circumventing technical access barriers employed by LinkedIn that prevent mass automated scraping. This included circumventing the following technical access measures: limits on the activity that an individual LinkedIn member may initiate on the site; the monitoring of patterns of webpage requests by

-7-

CASE NO. 5:16-CV-04463-LHK-NMC
PL'S ADMIN REQUEST FOR LEAVE TO SEEK EXPED. DISC.

LinkedIn members and guests in order to identify non-human activity indicative of scraping, and challenging or restricting accounts and site access to prevent scrapers from continuing to access the site; scanning, throttling, and at times blocking suspicious activity associated with particular IP addresses; challenging users with CAPTCHA[2] fields in order to log into LinkedIn whose activities are indicative of automated, non-human forms of access that facilitate scraping; and the use of CAPTCHA fields in order to prevent the creation of fake accounts. Compl. ¶¶ 19-26; ¶¶ 34-41.

These allegations of the circumvention of numerous technological access barriers more than sufficiently plead a claim under the CFAA, California Penal Code § 502(c)(1) and (c)(7), and the DMCA's anti-circumvention provisions, Compl. ¶¶ 50-72, and in fact, courts routinely have applied these statutes in data scraping and related contexts. *See, e.g., Facebook, Inc. v. Power Ventures, Inc.,* -- F.3d --, 2016 WL 3741956, at *7-8 (9th Cir. July 12, 2016) (defendant violated CFAA and § 502 where it "took . . . data from the Facebook website without Facebook's permission," "deliberately disregarded the cease and desist letter," and "circumvented IP barriers that further demonstrated that Facebook had rescinded permission for Power to access Facebook's computers"); *United States v. Nosal*, -- F.3d --, 2016 WL 3608752, at *8–10 (9th Cir. July 5, 2016) (circumventing "a technological barrier designed to keep out those 'without authorization'" violates CFAA); *Craigslist Inc. v. 3Taps Inc.*, 964 F. Supp. 2d 1178, 1184, 1187 (N.D. Cal. 2013) (Craigslist adequately pled violation of CFAA and § 502 where it alleged defendant ignored cease-and-desist letter and "circumvent[ed] Craigslist's IP blocking measures to continue scraping" public site; noting that "statute protects all information on any protected computer accessed 'without authorization,' and nothing in that language prohibits a computer owner from selectively revoking authorization to access its website"); *Couponcabin LLC v. Savings.com, Inc.,* 2016 WL 3181826, at *4 (N.D. Ind. June 8, 2016) ("CFAA liability may exist" where defendant accesses "publicly accessible electronic data" through "circumvent[ing] the Plaintiff's security measures

---

[2] CAPTCHA is an acronym for "Completely Automated Public Turing test to tell Computers and Humans Apart." The CAPTCHA field requires users to re-type a word or text that appears in obscured, colored type. These obscured words or text are legible to a real person – and familiar to those purchasing concert tickets, for instance, as a common step in an online registration process – but difficult for an automated program or bot to recognize. *See* Compl. ¶ 26.

-8-

after the Plaintiff blocked access from certain cloud computing/internet service providers and communicated with the Defendants by demanding that they cease and desist scraping-related activities"); *Facebook, Inc. v. Power Ventures, Inc.,* 2009 WL 1299698, at *5 (N.D. Cal. May 11, 2009) (DMCA claim adequately pled where complaint "alleges that Facebook implemented specific technical measures to block access" and website scraping and defendants "attempted to circumvent those technological measures"); *Craigslist, Inc. v. Naturemarket, Inc.,* 694 F. Supp. 2d 1039, 1057 (N.D. Cal. 2010) (allegations that defendant circumvented CAPTCHA "sufficiently stated a claim for violation" of DMCA; Craigslist also adequately pled claims for CFAA and § 502); *United States v. Lowson*, 2010 WL 9552416, at *5 (D.N.J. Oct. 12, 2010) (indictment adequately pled violation of CFAA where it alleged that defendants took actions to "defeat code-based security restrictions on Ticketmaster's websites," including "CAPTCHA").

Furthermore, LinkedIn alleges that the Doe Defendants, who consented to the LinkedIn User Agreement in creating accounts, have violated various contractual access and use restrictions in the agreement, including, for example, that users will not use "automated software, devices, scripts robots, other means or processes to access" and "scrape" the LinkedIn website and will not "[s]crape or copy profiles and information of others" through "crawlers, browser plugins and add-ons, and any other technology." Compl. ¶¶ 30-31, 40. These allegations adequately plead a breach of contract claim. *See id.* ¶¶ 73-84; *see, e.g., Craigslist Inc. v. 3Taps Inc.,* 942 F. Supp. 2d 962, 968–69, 977 (N.D. Cal. 2013) (noting that "relevant provisions of the TOU do not merely prohibit copying or reusing content, but rather include accessing the website for inappropriate purposes" and that Craigslist's breach of contract claim adequately pled); *Ticketmaster L.L.C. v. RMG Techs., Inc.,* 507 F. Supp. 2d 1096, 1113 (C.D. Cal. 2007) (plaintiff likely to prevail on breach of contract claim where defendant was "on notice of, and assented to, the Terms of Use" and "violated the Terms of Use by using automated devices to access the website" and "by using an application designed to thwart Plaintiff's access controls" in violation of terms of use provisions).

In addition, for purposes of California Penal Code § 502(c)(2), LinkedIn need only allege the unauthorized taking or use of information, without demonstrating any unauthorized access at

-9-

CASE NO. 5:16-CV-04463-LHK-NMC
PL'S ADMIN REQUEST FOR LEAVE TO SEEK EXPED. DISC.

all. *See United States v. Christensen*, No. 08-50531, -- F.3d --, 2015 WL 11120665, at *16 (9th Cir. Aug. 25, 2015) ("In contrast to the CFAA, the California statute [§ 502(c)(2)] does not require *unauthorized* access. It merely requires *knowing* access.… A plain reading of the statute demonstrates that its focus is on unauthorized taking or use of information."). Even apart from the question of unauthorized access, LinkedIn plainly has sufficiently alleged the unauthorized taking or use of information from its website without authorization. *See, e.g.,* Compl. ¶ 41.

Finally, LinkedIn adequately has pled personal jurisdiction over the Doe Defendants and proper venue, including by alleging that the Doe Defendants (1) have repeatedly, knowingly, and intentionally accessed and targeted LinkedIn's servers located in this judicial district without LinkedIn's authorization, and (2) became registered LinkedIn members agreeing to LinkedIn's User Agreement, including agreeing to a forum selection clause selecting this judicial district for resolution of all disputes between the parties. *See* Compl. at ¶¶ 29, 40.

These allegations sufficiently plead personal jurisdiction over the Doe Defendants and that this District is the proper venue. *See, e.g., NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 824-28 (N.D. Cal. 2014) (finding personal jurisdiction in a CFAA case over an Australian national whose "alleged transgressions" involve "improper access to NetApp's computer systems in California" in this district to take information); *Robert Diaz Assocs. Enters., Inc. v. Elete, Inc.*, 2004 WL 1087468, at *5 (S.D.N.Y. May 14, 2004) (finding personal jurisdiction over out-of-state defendant and holding that, in CFAA action, "personal jurisdiction may be established where the victim's computer is physically located"); *Facebook, Inc. v.ConnectU LLC*, 2007 WL 2326090, at *5-7 (N.D. Cal. Aug. 13, 2007) (holding that defendant's ignorance to plaintiff's geographic location insufficient to avoid personal jurisdiction for CFAA and related claims; defendants "may not have had actual knowledge as to Facebook's physical location, but they had sufficient knowledge expressly to aim their conduct at it through the Internet. The effects test, accordingly, is satisfied."); *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1022 (N.D. Cal. 2015) ("Defendant's conduct of accepting the terms of service is sufficient to constitute consent to personal jurisdiction in California.... The terms of service include a forum selection clause selecting this forum. [T]his constitutes sufficient evidence that Defendant has consented to

-10-

jurisdiction in this forum."); *Twitter, Inc. v. Skootle Corp.,* 2012 WL 2375486, at *5-6 (N.D. Cal. June 22, 2012) (personal jurisdiction and venue proper where defendant Twitter alleged "knowingly and purposefully entered into agreement with Twitter" with forum selection clause selecting this District, "used its California-based service to operate over 129,000 automated Twitter accounts," and "the plaintiff's business and goodwill suffered harm in this district," including "that [defendant] violated Twitter TOS by using 129,000 automated accounts to direct Twitter users to his online payment services").

### 4. There Is A Reasonable Likelihood LinkedIn Will Identify the Doe Defendants

Fourth, there is a reasonable—indeed, strong—likelihood that LinkedIn will identify the Doe Defendants through service of a subpoena on the ISPs and networks that LinkedIn has identified. The IP address data LinkedIn has collected through its research and investigation is sufficient to enable these ISPs and networks to identify the user accounts at issue and activity log data relevant to LinkedIn's investigation. *See* McLean Decl. at ¶ 11; *see also Braun*, 2012 WL 6087179, at *3 ("[B]ecause ISPs assign a unique IP address to each subscriber and retain subscriber activity records regarding the IP addresses assigned, the information sought in the subpoena will enable Plaintiff to serve Defendants and proceed with this case."). For example, the ISP Comcast, through which the Doe Defendants directed some of their scraping activity, commits in its own Customer Privacy Notice that it will comply "with the terms of valid legal process such as a subpoena" that requests information about its users. *See* Blavin Decl., Ex. A (Comcast Privacy Notice).

### B. Expedited Discovery Will Cause No Prejudice to Doe Defendants And Will Conserve Party and Judicial Resources

In addition to satisfying the test set forth in *Braun*, LinkedIn has good cause to seek expedited discovery in this case because there will be no prejudice to the Doe Defendants as a result of LinkedIn's discovery, and the discovery will conserve judicial and party resources. *See Semitool*, 208 F.R.D. at 276 ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."). The Doe Defendants will suffer no prejudice as a result of the discovery because

-11-

CASE NO. 5:16-CV-04463-LHK-NMC
PL'S ADMIN REQUEST FOR LEAVE TO SEEK EXPED. DISC.

LinkedIn's "request is extremely narrow, seeking only to identify defendant's contact information in order to advise it of suit." *UMG Recordings, Inc. v. Doe*, 2008 WL 4104214, at *5 (N.D. Cal. Sept. 3, 2008). At the same time, the administration of justice weighs in favor of permitting the discovery because the discovery will enable LinkedIn to amend its complaint to state its claims against specific, identified defendants in advance of the Federal Rule of Civil Procedure 26(f) conference. At present, because LinkedIn does not have Identifying Information sufficient to name and serve the Doe Defendants, LinkedIn has no one with whom to conduct a Rule 26(f) conference. Without the requested expedited discovery, this case cannot proceed in an efficient or judicious manner. Moreover, absent the expedited discovery in this matter, there is a risk that the information sought from certain ISPs and networks could be deleted, as might happen in the ordinary course of business given that many ISPs have retention schedules for this type of data and only keep it for a set number of months. *See* McLean Decl. at ¶ 14.

### C. LinkedIn Is Seeking Limited Discovery Relating To a Small Number of Doe Defendants

As noted above, LinkedIn has concluded based upon its investigation and analysis that the IP addresses at issue are engaged in automated and coordinated data scraping activities on the LinkedIn site. *See* McLean Decl. at ¶¶ 6, 12. Thus, notwithstanding the thousands of IP addresses associated with these activities, LinkedIn believes that a very small number of Doe Defendants are engaged in this conduct, who are likely to be corporate or business entities. *Id*. at ¶ 13.[3] This action therefore does not raise the unique joinder problems presented by other actions from the online copyright infringement context where the plaintiffs seek to join dozens or even hundreds of individual Doe defendants who have separately engaged in the sharing and downloading of copyrighted files over peer-to-peer networks. *See, e.g., Malibu Media, LLC v. John Does 1 through 64*, 2012 WL 4835317, at *2 (E.D. Cal. Oct. 10, 2012) ("Given the technical complexities of BitTorrent swarm functions, it appears unlikely that the 64 Doe defendants engaged in any

---

[3] Although LinkedIn brings claims against "Does 1-100," as is common when claims against Doe persons or entities are asserted, it believes the actual number of Doe entities at issue to be far less. To the extent the Court found this at all an issue, LinkedIn can amend the complaint to be against Does 1-5.

-12-

coordinated effort or concerted activity."); *Boy Racer, Inc. v. Does 1–60*, 2011 WL 3652521, at *4 (N.D. Cal. Aug. 19, 2011) (same).[4]

**IV. CONCLUSION**

For the reasons set forth above, LinkedIn respectfully requests that the Court promptly grant this motion for leave for expedited third-party discovery.

DATED: August 17, 2016                MUNGER, TOLLES & OLSON LLP

By: ___*/s/ Jonathan H. Blavin*___
JONATHAN H. BLAVIN
Attorneys for Plaintiff Linkedin Corporation

---

[4] The court also may, on a motion or on its own, add or drop a party under Federal Rule of Civil Procedure 21 so long as "no substantial right will be prejudiced." *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997); Fed. R. Civ. P. 21. Courts construe Rule 21 liberally "in order to promote trial convenience and to expedite the final determination of disputes." *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977).

-13-

CASE NO. 5:16-CV-04463-LHK-NMC
PL'S ADMIN REQUEST FOR LEAVE TO SEEK EXPED. DISC.