| | |
|---|---|
| 1 | JONATHAN H. BLAVIN (State Bar No. 230269) |
|   | jonathan.blavin@mto.com |
| 2 | NICHOLAS D. FRAM (State Bar No. 288293) |
|   | nicholas.fram@mto.com |
| 3 | MUNGER, TOLLES & OLSON LLP |
|   | 560 Mission Street |
| 4 | Twenty-Seventh Floor |
|   | San Francisco, California 94105-2907 |
| 5 | Telephone:   (415) 512-4000 |
|   | Facsimile:   (415) 512-4077 |
| 6 | |
| 7 | Attorneys for LinkedIn Corporation |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LinkedIn Corporation and LinkedIn Ireland Unlimited Company,<br><br>          Plaintiffs,<br><br>     vs.<br><br>Raphael Azot, and Dataspectre,<br><br>          Defendants. | Case No. 5:16-cv-4463 (LHK) (NC)<br><br>**FIRST AMENDED COMPLAINT FOR:**<br>**(1) VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §§ 1030 ET SEQ.;**<br>**(2) VIOLATION OF CALIFORNIA PENAL CODE §§ 502 ET SEQ.;**<br>**(3) VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. §§ 1201 ET SEQ.;**<br>**(4) BREACH OF CONTRACT;**<br>**(5) TRESPASS; AND**<br>**(6) MISAPPROPRIATION**<br><br>**DEMAND FOR JURY TRIAL** |

FIRST AMENDED COMPLAINT

Plaintiffs LinkedIn Corporation and LinkedIn Ireland Unlimited Company (collectively "LinkedIn" or "Plaintiffs"), by and through their attorneys, bring this Amended Complaint against Raphael Azot and Dataspectre (collectively, "Defendants") for injunctive relief and damages. LinkedIn alleges as follows:

1. LinkedIn is the world's largest professional network, with more than 467 million members in over 200 countries and territories around the globe. LinkedIn's mission is to connect the world's professionals to make them more productive and successful. Through its proprietary platform, LinkedIn allows its members to create, manage and share their professional histories and interests online.

2. At the heart of LinkedIn's platform are its members, whose LinkedIn profiles serve as their professional online identities. In order to protect the data that LinkedIn's members entrust to LinkedIn, LinkedIn employs numerous technical measures designed to detect, limit, and block "scraping" – the extraction and copying of data – on its website. LinkedIn's User Agreement also prohibits "[s]crap[ing] or copy[ing] profiles and information of others" through "crawlers, browser plugins and add-ons, and any other technology" used to access the LinkedIn website.

3. During periods of time since at least as early as April 2016, on information and belief, Defendants employed various automated software programs (often referred to as "bots") to extract and copy data from many LinkedIn pages. To access this information on LinkedIn's site, Defendants circumvented several technical barriers employed by LinkedIn that prevent mass automated scraping, and have knowingly and intentionally violated various access and use restrictions in LinkedIn's User Agreement, which Defendant Azot agreed to abide by in registering his LinkedIn member account. In so doing, Defendants have violated an array of federal and state laws, including the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, et seq. (the "CFAA"), California Penal Code §§ 502 et seq., and the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201 et seq. (the "DMCA"), and have engaged in unlawful acts of breach of contract, misappropriation, and trespass.

4. Defendants' unlawful conduct has harmed and threatens the LinkedIn platform in several ways. First, their actions have violated the trust that LinkedIn members place in the

company to protect their information. Their unauthorized scraping also increased the strain on LinkedIn's network servers and caused LinkedIn to expend time and resources investigating and responding to their misconduct.

5. LinkedIn responded swiftly to Defendants' activities, including by implementing additional technical barriers to the LinkedIn website to protect against mass scraping. In addition to these measures, and to ensure that future incidents do not occur, LinkedIn brought this action on August 8, 2016 to identify Defendants, which LinkedIn was able to do following early discovery that the Court permitted, and to obtain permanent injunctive relief halting their unlawful conduct. LinkedIn now amends its complaint to name Defendants as parties to this action. Defendants' activities, if not enjoined, threaten ongoing and irreparable harm to LinkedIn, including to its reputation and substantial consumer goodwill. LinkedIn further is entitled to its actual damages, statutory damages, and/or exemplary damages as a result of Defendants' misconduct.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 because this action alleges violations of federal statutes, including the CFAA, 18 U.S.C. §§ 1030, et seq., and the DMCA, 17 U.S.C. §§ 1201, et seq. The Court has supplemental jurisdiction over the state law causes of action pleaded herein pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this District under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

8. During all relevant times, Defendants have repeatedly, knowingly, and intentionally targeted their wrongful acts at LinkedIn, which is headquartered in this judicial district.

9. Azot also has agreed to LinkedIn's User Agreement, which contains a forum selection clause selecting this judicial district for resolution of all disputes between the parties.

10. Defendant Dataspectre, founded by Defendant Azot, also maintains one of its two offices in this judicial district, and, on information and belief, Defendant Azot routinely visits this judicial district.

## INTRADISTRICT ASSIGNMENT

11. This is an intellectual property action to be assigned on a district-wide basis under Civil Local Rule 3-2(c).

## THE PARTIES

12. LinkedIn Corporation is a Delaware corporation with its principal place of business in Sunnyvale, California.

13. LinkedIn Ireland Unlimited Company is an Irish corporation with its principal place of business in Dublin, Ireland.

14. Raphael Azot, on information and belief, is a national of France who makes routine trips to Northern California. He is responsible in whole or in part for the wrongdoing alleged herein. Azot maintains a LinkedIn member page and has agreed to the LinkedIn User Agreement.

15. Dataspectre maintains a website (located at http://www.dataspectre.co/ and http://www.dataspectre.fr/) that claims to "collect hundreds of millions of datas [sic] to compose the largest database of corporate datas [sic] in the world." Dataspectre maintains offices in St. Denis, France, and in Palo Alto, California.

16. Dataspectre was founded by Defendant Azot. According to WHOIS domain name registration records, its website domain is registered to Azot:

**dataspectre.co**

**DOMAIN INFORMATION**
- Domain: dataspectre.co
- Registrar: OVH SARL
- Registration Date: 2016-05-30
- Expiration Date: 2017-05-29
- Updated Date: 2016-08-09
- Status: clientDeleteProhibited / clientTransferProhibited
- Name Servers: dns101.ovh.net / ns101.ovh.net

**REGISTRANT CONTACT**
- Name: Raphael Azot
- Street: dataspectre.co, office #9482930 c/o OwO, BP80157
- City: Roubaix Cedex 1
- Postal Code: 59053
- Country: France
- Phone: +33 ▮
- Email: cs19uqypztkb0y1a09y5 ▮

17. On information and belief, Dataspectre is the alter ego of Defendant Azot, and a vehicle through which Defendant Azot operates.

18. If discovery reveals that Defendants are working in concert with one or more other people or entities, LinkedIn reserves the right to amend its complaint accordingly.

## FACTS

### The LinkedIn Professional Network

19. LinkedIn is the world's largest professional network, with over 467 million members worldwide and over 128 million members in the United States.  LinkedIn's mission is to connect the world's professionals to make them more productive and successful.

20. Through its proprietary platform, LinkedIn members are able to create, manage and share their professional identities online, build and engage with their professional network, access shared knowledge and insights, and find business opportunities, enabling them to be more productive and successful.  LinkedIn's broader vision is to create economic opportunity for every member of the global workforce.

21. At the heart of LinkedIn's platform are its members, who create individual profiles that serve as their professional profiles online.  LinkedIn is available at no cost to anyone who wants to join and who agrees to the terms of LinkedIn's User Agreement, Privacy Policy, and Cookie Policy.  LinkedIn counts executives from all 2015 Fortune 500 companies as members.

22. LinkedIn members populate their profiles with a wide range of information concerning their professional lives, including summaries (narratives about themselves), job histories, skills, interests, educational background, professional awards, photographs, and other information.

23. The LinkedIn website is an original copyrighted work.  Among the significant original elements of the LinkedIn website are the distinctive page layout, design, graphical elements, and organization of member and company profile pages and the LinkedIn homepage and news feed.

24. LinkedIn has invested and plans to continue to invest substantial time, labor, skill, and financial resources into the development and maintenance of the LinkedIn site.

**LinkedIn's Technical Safeguards and Security Measures
to Protect LinkedIn Against Unauthorized Access**

25.     LinkedIn works hard to protect the integrity and security of its network and systems.  Among other things, it employs an array of technological safeguards and barriers designed to prevent data scrapers, bots, and other automated systems from accessing and copying its members' data on a large scale.

26.     One such safeguard is LinkedIn's FUSE system.  FUSE scans and imposes a limit on the activity that an individual LinkedIn member may initiate on the site.  This limit is intended to prevent would-be data scrapers utilizing automated technologies from quickly accessing a substantial volume of (public or private) member profiles.

27.     Another safeguard is LinkedIn's Quicksand system.  Quicksand monitors the patterns of webpage requests by LinkedIn members in order to identify non-human activity indicative of scraping.  Quicksand can quickly challenge or restrict an account to prevent scrapers from continuing to access the site.

28.     Another protection measure is LinkedIn's Sentinel system, which scans, throttles, and at times blocks suspicious activity associated with particular accounts and IP addresses.[1]

29.     LinkedIn also monitors and blocks groups of IP addresses using its Org Block system.  This system includes an evolving manual list of known bad IP addresses and a machine-learned model that identifies groups of IP addresses serving large-scale scrapers.

30.     LinkedIn also employs Member and Guest Request Scoring systems, which also restrict automated, non-human forms of access that facilitate scraping.  The Member Request Scoring System monitors page requests made by LinkedIn members while logged into their accounts.  If high levels of activity are detected for certain types of accounts, the member is logged out and may either be warned, restricted, or challenged with a CAPTCHA[2] in order to log back into LinkedIn.

---

[1]  An IP address in this context is a numerical label assigned to each access point to the Internet.

[2]  CAPTCHA is an acronym for "Completely Automated Public Turing test to tell Computers and Humans Apart."

31. Similarly, the LinkedIn Guest Request Scoring system monitors and limits page requests made by users who are not logged into LinkedIn. If unusual patterns or high levels of activity are detected, the user is redirected to LinkedIn's log-in page and is prevented from viewing additional LinkedIn pages while not logged in.

**LinkedIn's Prohibitions on Data Scraping and Other Unauthorized Conduct**

32. LinkedIn's User Agreement[3] also prohibits accessing and scraping LinkedIn's website through automated software and other technologies.

33. As demonstrated by the screenshot below, a prospective member registers for an account by providing a first name, last name, email address, and password, and through clicking "Join Now," "agree[s] to LinkedIn's User Agreement, Privacy Policy, and Cookie Policy," all of which are hyperlinked on the page.

[Screenshot of LinkedIn registration form: "Be great at what you do / Get started - it's free." with fields for First name, Last name, Email, Password (6 or more characters), text "By clicking Join now, you agree to LinkedIn's User Agreement, Privacy Policy, and Cookie Policy.", and a "Join now" button.]

34. Azot has a member profile on LinkedIn and agreed to be bound by the User Agreement when he created it.

35. LinkedIn's User Agreement explains that members, users, and visitors to the

---

[3] *See* https://www.linkedin.com/legal/user-agreement (last visited March 9, 2017).

LinkedIn website must abide by certain restrictions in accessing and using the LinkedIn website.

36. Section 8.2 of the current version of the User Agreement, effective October 23, 2014, prohibits those who are bound to the agreement from engaging in any of the following activities:

- "Us[ing] … automated software, devices, scripts robots, other means or processes to access, 'scrape,' 'crawl' or 'spider' the Services or any related data or information";
- "Us[ing] bots or other automated methods to access the Services";
- "Scrap[ing] or copy[ing] profiles and information of others" through "crawlers, browser plugins and add-ons, and any other technology";
- "Rent[ing], leas[ing], loan[ing], trad[ing], sell[ing]/re-sell[ing] access to the Services or related any information or data";

37. As demonstrated below, Defendants have engaged in a systematic pattern of conduct in violation and breach of each of these provisions of the User Agreement.

**Defendants' Unlawful Data Scraping Activities**

38. On information and belief, Defendants have engaged in widespread scraping of LinkedIn (and other sites on the Internet) and the creation of massive databases of personal information.

39. Defendant Azot on his LinkedIn profile states that he "has several years of experience" in "scraping."[4] On his Hopwork page (a site where freelancers market their services), he states that he is a "Scraping Expert," with an expertise in "LinkedIn."[5] He boasts of being able to provide a list of prospects, including job titles, current company, email addresses, LinkedIn URL, and social profiles, as demonstrated by the screenshot below.

//

---

[4] htttps://www.linkedin.com/in/raphaelazot (last visited March 9, 2017).

[5] https://www.hopwork.ch/profile/raphaelazot2 (last visited March 9, 2017).

-7-
FIRST AMENDED COMPLAINT



40. On its website, Dataspectre claims to "collect hundreds of millions of datas [sic] to compose the largest database of corporate datas [sic] in the world." It further states, "WE KNOW THINGS …. We collect and cross data from over 300 different sources," including "social networks," to "issue the most accurate data on each person you are looking." The Dataspectre website also invites users to "Click here to see the infos we have on you!"

41. Below is a screenshot of the Dataspectre website.[6]

//

---

[6] http://www.dataspectre.co/# (last visited March 9, 2017).



42. During periods of time since at least as early as April 2016, Defendants, on information and belief, created and/or utilized a highly coordinated and automated network of computers (a "botnet") distributed across dozens of Internet Service Providers ("ISPs") and networks, and many thousands of IP addresses. These ISPs and networks span the range of local, regional, and national providers in this country and abroad.

43. In engaging in this conduct, Defendants have accessed LinkedIn's website and scraped data from many LinkedIn pages in circumvention of several of LinkedIn's technological defenses and in violation of the access and use restrictions in LinkedIn's User Agreement.

44. First, through utilizing large sets of distributed networks, on information and belief, Defendants have circumvented the technical restrictions that LinkedIn places on the amount of activity users may initiate, such as FUSE, Quicksand, and the Member and Guest Request Scoring systems. This has allowed them to engage in highly automated queries, scraping, and other conduct which for any particular account or user are less than the total number of permitted activities over a period of time. Such activity circumvents LinkedIn's automated restriction levels, yet allows Defendants to engage in equivalent levels of banned automated conduct.

45. Further, on information and belief, Defendants have circumvented LinkedIn's

technical protection measures that monitor and block suspicious activity associated with particular IP addresses, including Sentinel and the Org Block system. This also has allowed Defendants to mask their true identity.

46. In creating and registering his accounts, Defendant Azot agreed to abide by the access and use restrictions in LinkedIn's User Agreement. Defendants' conduct, as described above, violates several provisions of the User Agreement, including that LinkedIn members and users would not use "automated software, devices, scripts robots, other means or processes to access, 'scrape,' 'crawl' or 'spider' the Services or any related data or information." Defendants were on notice of and knowingly violated these access and use restrictions in engaging in their unlawful conduct.

47. Through conducting third-party discovery, LinkedIn has traced a dataset containing data scraped from LinkedIn through the conduct described above to a virtual server hosted by a third-party cloud computing company; Defendant Azot was identified by this cloud computing company as controlling the account associated with this server. Records in the dataset contain last-visited time stamps that match LinkedIn's records of scraping activity during the spring of 2016. Additionally, metadata indicates that this dataset was on the cloud-computer server starting in July 2016, shortly after the period of time that LinkedIn's records show the scraping activity to have occurred.

48. Defendants did not have permission or authorization from any LinkedIn members, or from LinkedIn, at any point in time to access their member profiles and scrape their data on LinkedIn through these automated technologies.

49. LinkedIn has implemented additional technical safeguards to protect against unauthorized access to the LinkedIn site.

**Defendants Have Caused and Threaten Ongoing and Irreparable Injury to LinkedIn**

50. By engaging in the activities described above, Defendants have caused, and if not halted will continue to cause, ongoing and irreparable harm to LinkedIn, in a variety of ways, including ongoing and irreparable harm to its consumer goodwill.

-10-
FIRST AMENDED COMPLAINT

51. LinkedIn's members entrust to LinkedIn their professional histories and interests on LinkedIn's site. LinkedIn will suffer ongoing and irreparable harm to its consumer goodwill and trust, which LinkedIn has worked hard for years to earn and maintain, if Defendants' conduct continues.

52. Defendants' misconduct also has imposed significant strains on LinkedIn's servers, including through the use of automated technologies to view many LinkedIn pages. The increased strain on LinkedIn's servers has impaired and reduced LinkedIn's ability to serve legitimate LinkedIn users.

53. The harm to LinkedIn's computer systems, including increased strain on its network servers, and the significant human, financial, and technical resources, including hundreds of hours of employee time, LinkedIn has expended investigating and responding to Defendants' unlawful activities, has been at a cost to LinkedIn well in excess of $5,000.

## FIRST CLAIM FOR RELIEF

### Computer Fraud and Abuse Act, 18 U.S.C. §§1030 et seq.

54. LinkedIn realleges and incorporates by reference all of the preceding paragraphs.

55. LinkedIn's computers and servers are involved in interstate and foreign commerce and communication, and are protected computers under 18 U.S.C. §1030(e)(2).

56. Defendants knowingly and intentionally accessed LinkedIn's computers and servers without authorization or in excess of authorization. They have circumvented various technological barriers LinkedIn has employed to protect its computers, servers, and member data against unauthorized access – including FUSE, Sentinel, Org Block, the Member and Guest Request Scoring systems, and/or additional safeguards – and have violated access restrictions of LinkedIn's User Agreement.

57. After accessing LinkedIn's computers and servers without authorization or in excess of authorization, Defendants accessed, obtained and used valuable information from LinkedIn's computers and servers in transactions involving interstate or foreign communications in violation of 18 U.S.C. § 1030(a)(2). This information includes, among other things, the contents of many LinkedIn profiles, and this use includes, among other things, distributing that

content to others.

58. Defendants knowingly, willfully, and with an intent to defraud, accessed LinkedIn's computers and servers without authorization or in excess of authorization, including through masking Defendants' identity to LinkedIn's systems, and thereby furthered Defendants' intended fraud and obtained valuable information from LinkedIn's computers and servers that Defendants used to obtain something of value in violation of 18 U.S.C. § 1030(a)(4).

59. LinkedIn has suffered damage and loss by reason of these violations, including, without limitation, harm to LinkedIn's computer systems, expenses associated with being forced to investigate and respond to the unauthorized access and abuse of its computers and servers, and other losses and damage in an amount to be proven at trial, in excess of $5,000 aggregated over a one-year period.

60. In addition, LinkedIn has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants. Accordingly, LinkedIn is entitled to injunctive relief.

## SECOND CLAIM FOR RELIEF

**California Comprehensive Computer Access and Fraud Act, Cal. Penal Code §§ 502 et seq.**

61. LinkedIn realleges and incorporates by reference all of the preceding paragraphs.

62. LinkedIn's computers and servers are computers, computer systems, and/or computer networks within the meaning of Cal. Penal Code § 502(b).

63. Defendants have circumvented various technological barriers LinkedIn has employed to protect its computers, servers, and data against unauthorized access and use – including FUSE, Sentinel, Org Block, the Member and Guest Request Scoring systems, and/or additional safeguards – and have violated access and use restrictions of LinkedIn's User Agreement.

64. Defendants wrongfully obtained and used valuable information from LinkedIn's website.

65. Defendants knowingly and without permission accessed, took, copied and made use of data and files from LinkedIn's computers, computer systems, and/or computer networks,

1  including to wrongfully control and/or obtain such data, in violation of Cal. Penal Code
2  §§ 502(c)(1) & (2).

3      66.    Defendants knowingly and without permission accessed or caused to be accessed
4  LinkedIn's computers, computer systems, and/or computer networks in violation of Cal. Penal
5  Code § 502(c)(7).

6      67.    Defendants knowingly and without permission disrupted or caused the disruption
7  of LinkedIn's computer services to authorized users of LinkedIn's computers, computer systems,
8  and/or computer networks in violation of Cal. Penal Code § 502(c)(5).

9      68.    As a direct and proximate result of Defendants' unlawful conduct, Defendants have
10 caused damage to LinkedIn in an amount to be proven at trial. LinkedIn is also entitled to recover
11 its reasonable attorney's fees pursuant to Cal. Penal Code § 502(e).

12     69.    LinkedIn believes that Defendants' acts were willful and malicious, including that
13 Defendants' acts described above were done with the deliberate intent to harm LinkedIn.
14 LinkedIn is therefore entitled to punitive damages.

15     70.    In addition, LinkedIn has suffered and will continue to suffer irreparable harm, and
16 its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants.
17 Accordingly, LinkedIn is entitled to injunctive relief.

### THIRD CLAIM FOR RELIEF

**The Digital Millennium Copyright Act, 17 U.S.C. §§ 1201 et seq.**

20     71.    LinkedIn realleges and incorporates by reference all of the preceding paragraphs.

21     72.    LinkedIn employs various layers of technological protections – including FUSE,
22 Sentinel, Org Block, the Member and Guest Request Scoring systems, and/or additional
23 safeguards – to protect LinkedIn's computers, servers, and data from unauthorized access and
24 copying, including through automated crawling and scraping technologies. These technological
25 protection measures effectively control access to the copyrighted materials on LinkedIn's servers,
26 including the LinkedIn website, member profile pages, company pages, and the LinkedIn
27 homepage and news feed, and protect LinkedIn's and its members' exclusive rights in these
28 copyrighted materials. These technological protection measures scan and monitor accessing

1  systems and require the application of information to confirm the absence of automated behavior
2  patterns, server-origination data, blocked IP addresses, and/or additional information, with the
3  authority of LinkedIn (on behalf of itself and its members), to gain access to the copyrighted
4  materials on LinkedIn's servers.

5  73.  Despite LinkedIn's best efforts to protect the LinkedIn site from Defendants'
6  unauthorized access, Defendants circumvented LinkedIn's technological measures – including
7  FUSE, Sentinel, Org Block, the Member and Guest Request Scoring systems, and/or additional
8  safeguards – and gained unauthorized access to copyrighted materials, including without
9  limitation the copyrighted LinkedIn website and member profile pages, in violation of 17 U.S.C.
10 § 1201(a)(1).

11 74.  As a result of Defendants' wrongful acts, LinkedIn has suffered, is continuing to
12 suffer, and will continue to suffer damages to be proven at trial.  LinkedIn is further entitled to all
13 profits attributable to Defendants' wrongful acts to be proven at trial pursuant to 17 U.S.C.
14 § 1201(c).

15 75.  Alternatively, upon its election at any time before final judgment is entered,
16 LinkedIn is entitled to recover statutory damages from Defendants pursuant to 17 U.S.C. § 1203,
17 ranging from a minimum of $2,500 up to $25,000, for each act of circumvention committed by
18 Defendants.  At a minimum, Defendants have engaged in thousands of distinct acts of
19 circumvention.

20 76.  Defendants' circumventions also have caused LinkedIn irreparable harm.  Unless
21 restrained and enjoined, Defendants will continue to commit such acts.  LinkedIn's remedies at
22 law are not adequate to compensate it for these inflicted and threatened injuries, and thus LinkedIn
23 is entitled to injunctive relief as provided by 17 U.S.C. § 1203.

### FOURTH CLAIM FOR RELIEF

**Breach of Contract**

26 77.  LinkedIn realleges and incorporates by reference all of the preceding paragraphs.
27 78.  Use of the LinkedIn website and use of LinkedIn services are governed by and
28 subject to the User Agreement.

79. LinkedIn members are presented with the User Agreement and must affirmatively accept and agree to the User Agreement to register for a LinkedIn account.

80. At all relevant times, LinkedIn also prominently displayed a link to the User Agreement on LinkedIn's homepage.

81. Azot was on notice of and agreed to the User Agreement when he created his member profile on LinkedIn.

82. The User Agreement is enforceable and binding on Defendants.

83. Defendants repeatedly accessed the LinkedIn website with knowledge of the User Agreement and all of its prohibitions. Despite their knowledge of the User Agreement and its prohibitions, Defendants accessed and continue to access the LinkedIn website to, among other things, scrape, crawl, or use other automated technology or software to gain access to the LinkedIn website without the consent of LinkedIn.

84. Defendants' actions, as described above, have willfully, repeatedly, and systematically breached the User Agreement.

85. LinkedIn has performed all conditions, covenants, and promises required of it in accordance with the User Agreement.

86. Defendants' conduct has damaged LinkedIn, and caused and continues to cause irreparable and incalculable harm and injury to LinkedIn.

87. LinkedIn is entitled to injunctive relief, compensatory damages, and/or other equitable relief.

## FIFTH CLAIM FOR RELIEF

**Trespass**

88. LinkedIn realleges and incorporates by reference all of the preceding paragraphs.

89. Defendants intentionally, and without authorization, accessed and interacted with LinkedIn, including without limitation, LinkedIn's website, computer systems and servers.

90. Through disregarding the prohibitions set forth in LinkedIn's User Agreement to which they been on notice of and expressly consented to, and in circumvention of various technical barriers, Defendants unlawfully gained access to and interfered and intermeddled with

1  LinkedIn, its website, computer systems, and its servers.

2      91.    Defendants' unauthorized interference with and access to LinkedIn, its website,
3  computer systems, and its servers, among other harms, has reduced LinkedIn's capacity to service
4  its users because it has occupied, used, and placed strain on LinkedIn's systems and resources.

5      92.    Defendants' conduct constitutes trespass that has harmed and will continue to harm
6  LinkedIn.  As a result, LinkedIn has been and will continue to be damaged.

7      93.    LinkedIn has suffered and will continue to suffer irreparable harm, and its remedy
8  at law is not itself adequate to compensate it for injuries inflicted by Defendants.  Accordingly,
9  LinkedIn is entitled to injunctive relief.

## SIXTH CLAIM FOR RELIEF

### Misappropriation

12      94.    LinkedIn realleges and incorporates by reference all of the preceding paragraphs.

13      95.    LinkedIn has invested substantial time, labor, skill, and financial resources into the
14  creation and maintenance of LinkedIn, its computer systems and servers, including system and
15  server capacity, as well as the content on the LinkedIn website, which is time sensitive.
16  Defendants have invested none of their own time and resources into developing and building the
17  LinkedIn website and platform.

18      96.    Disregarding the prohibitions set forth in LinkedIn's User Agreement to which they
19  have been on notice of and expressly consented to, and in circumvention of various technical
20  barriers, Defendants, without authorization, have wrongfully accessed LinkedIn's website,
21  computer systems and servers, and obtained data from the LinkedIn site.

22      97.    Defendants' appropriation and use of this data was at little or no cost to
23  Defendants, without them having to make the substantial investment in time, labor, skill, and
24  financial resources made by LinkedIn in developing the LinkedIn website and platform.  In other
25  words, Defendants have reaped what they have not sown.  Defendants' use of LinkedIn's
26  computer systems and servers, including member data from the LinkedIn site and system and
27  server capacity, constitutes free-riding on LinkedIn's substantial investment of time, effort, and
28  expense.

98. As a result of this misappropriation, LinkedIn has been forced to expend additional time and resources, including but not limited to, investigating and responding to Defendants' activities, and Defendants have been able to exploit and benefit from LinkedIn's substantial investment of time, effort, and expense.

99. LinkedIn has been and will continue to be damaged as the result of Defendants' acts of misappropriation.

100. LinkedIn has suffered and will continue to suffer irreparable injury, and its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, LinkedIn prays that judgment be entered in its favor and against Defendants, as follows:

1. A permanent injunction enjoining and restraining all Defendants, their employees, representatives, agents, and all persons or entities acting in concert with them during the pendency of this action and thereafter perpetually from

   a. accessing or using LinkedIn's website, servers, systems, and any data displayed or stored therein, including through scraping and crawling technologies, for any commercial purpose whatsoever; and

   b. extracting and copying data appearing on LinkedIn's website to their own servers or systems or those controlled by them;

2. An order requiring Defendants to destroy all documents, data, and other items, electronic or otherwise, in their possession, custody, or control, that were wrongfully extracted and copied from LinkedIn's website, along with any data that Defendants have inferred as a result of data wrongfully extracted and copied from LinkedIn's website;

3. An award to LinkedIn of damages, including, but not limited to, compensatory, statutory, profits of Defendants, and/or punitive damages, as permitted by law;

4. An award to LinkedIn of its costs of suit, including, but not limited to, reasonable attorney's fees, as permitted by law; and

5. Such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

LinkedIn hereby demands a jury trial of all issues in the above-captioned action that are triable to a jury.

DATED:  March 9, 2017                    MUNGER, TOLLES & OLSON


By:   */s/ Jonathan H. Blavin*
         JONATHAN H. BLAVIN

         Attorneys for LinkedIn Corportation