1  JONATHAN H. BLAVIN (State Bar No. 230269)
   jonathan.blavin@mto.com
2  NICHOLAS D. FRAM (State Bar No. 288293)
   nicholas.fram@mto.com
3  MUNGER, TOLLES & OLSON LLP
   560 Mission Street
4  Twenty-Seventh Floor
   San Francisco, California 94105-2907
5  Telephone:     (415) 512-4000
   Facsimile:     (415) 512-4077
6
   Attorneys for Plaintiffs LinkedIn Corporation and
7  LinkedIn Ireland Unlimited Company

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12

13  LinkedIn Corporation and LinkedIn Ireland      Case No. 5:16-cv-4463 (LHK) (NC)
    Unlimited Company,
                                                   **SECOND AMENDED COMPLAINT FOR:**
14                 Plaintiffs,                      **(1) VIOLATION OF THE COMPUTER
                                                   FRAUD AND ABUSE ACT, 18 U.S.C.**
15        vs.                                      **§§ 1030 ET SEQ.;
                                                   (2) VIOLATION OF CALIFORNIA**
16  Scraping Hub Limited, Pablo Hoffman, and       **PENAL CODE §§ 502 ET SEQ.;**
    Shane Evans,                                   **(3) VIOLATION OF THE DIGITAL
                                                   MILLENNIUM COPYRIGHT ACT, 17**
17                 Defendants.                      **U.S.C. §§ 1201 ET SEQ.;
                                                   (4) BREACH OF CONTRACT;**
18                                                 **(5) TRESPASS; AND
                                                   (6) MISAPPROPRIATION**
19

20                                                 **DEMAND FOR JURY TRIAL**

21

22

23

24

25

26

27

28

Plaintiffs LinkedIn Corporation and LinkedIn Ireland Unlimited Company (collectively "LinkedIn" or "Plaintiffs"), by and through their attorneys, bring this Second Amended Complaint against Scraping Hub Limited ("Scrapinghub"), Pablo Hoffman, and Shane Evans (collectively, "Defendants") for injunctive relief and damages.  LinkedIn alleges as follows:

1.     LinkedIn is the world's largest professional network, with more than 500 million members in over 200 countries and territories around the globe.  LinkedIn's mission is to connect the world's professionals to make them more productive and successful.  Through its proprietary platform, LinkedIn allows its members to create, manage and share their professional histories and interests online.

2.     At the heart of LinkedIn's platform are its members, whose LinkedIn profiles serve as their professional online identities.  In order to protect the data that LinkedIn's members entrust to LinkedIn, LinkedIn employs numerous technical measures on its website designed to detect, limit, and block "scraping" – the accessing, extraction, and copying of data on a large scale.  LinkedIn's User Agreement also prohibits "[s]crap[ing] or copy[ing] profiles and information of others" through "crawlers, browser plugins and add-ons, and any other technology" used to access the LinkedIn website.

3.     During periods of time since at least as early as October 2014, Defendants employed various automated software programs (often referred to as "bots") to extract and copy data from many LinkedIn pages.  To access this information on LinkedIn's site, Defendants circumvented several technical barriers employed by LinkedIn that prevent mass automated scraping, and have knowingly and intentionally violated various access and use restrictions in LinkedIn's User Agreement, which Defendants agreed to in registering LinkedIn accounts and through using LinkedIn, including creating a LinkedIn SlideShare account and a "Company Page." In so doing, Defendants have violated an array of federal and state laws, including the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 et seq. (the "CFAA"), California Penal Code §§ 502 et seq., and the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201 et seq. (the "DMCA"), and have engaged in unlawful acts of breach of contract, misappropriation, and trespass.

4.      Defendants' unlawful conduct has harmed and threatens the LinkedIn platform in several ways.  First, their actions have violated the trust that LinkedIn members place in the company to protect their information.  Their unauthorized scraping also increased the strain on LinkedIn's network servers and caused LinkedIn to expend time and resources investigating and responding to Defendants' misconduct.  On information and belief, Defendants have been selling data obtained illegally from LinkedIn for profit to others, thereby magnifying the harm that LinkedIn has suffered.

5.      LinkedIn responded swiftly to Defendants' activities, including by implementing additional technical barriers to the LinkedIn website to protect against mass scraping.  In addition to these measures, and to ensure that future incidents do not occur, LinkedIn brought this action on August 8, 2016 to identify Defendants, which LinkedIn was able to do following early discovery that the Court permitted, and to obtain injunctive relief halting their unlawful conduct.  Through the course of this early discovery, LinkedIn identified a dataset of LinkedIn data on a cloud computing service that it has now traced to Defendants, along with other information, as described further below, that squarely implicates Defendants in unauthorized and illegal scraping of the LinkedIn website.  As an example, in communications with prospective customers, Scrapinghub has boasted that while "Linkedin has very sophisticated bot counter-measures," Scrapinghub has "worked around" them using "proxy techs, splash, session/cookie handling, etc., which is very complicated."

6.      LinkedIn now amends its complaint to name Defendants as parties to this action.  Defendants' activities, if not enjoined, threaten ongoing and irreparable harm to LinkedIn, including to its reputation and substantial consumer goodwill.  LinkedIn further is entitled to its actual damages, statutory damages, and/or exemplary damages as a result of Defendants' misconduct.

## JURISDICTION AND VENUE

7.      This Court has federal question jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 because this action alleges violations of federal statutes, including the CFAA, 18 U.S.C. §§ 1030 et seq., and the DMCA, 17 U.S.C. §§ 1201 et seq.  The Court has supplemental jurisdiction over the state law causes of action pleaded herein pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in this judicial district under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this district.

9.      During all relevant times, Defendants have repeatedly, knowingly, and intentionally targeted their wrongful acts at LinkedIn, which is headquartered in this judicial district.

10.     Defendant Scrapinghub also has at least 3 present employees located in this judicial district, and has had several employees in the past located in this judicial district.

11.     Defendants have agreed to LinkedIn's User Agreement, which contains a forum selection clause selecting this judicial district for resolution of all disputes between the parties.

## INTRADISTRICT ASSIGNMENT

12.     This is an intellectual property action to be assigned on a district-wide basis under Civil Local Rule 3-2(c).

## THE PARTIES

13.     LinkedIn Corporation is a Delaware corporation with its principal place of business in Sunnyvale, California.

14.     LinkedIn Ireland Unlimited Company is an Irish corporation with its principal place of business in Dublin, Ireland.

15.     Defendant Scrapinghub is a company incorporated under the laws of Ireland (registered number 492771) that was founded in 2010.  Scrapinghub states on its website that it has offices in Cork, Ireland, and Montevideo, Uruguay, and that it has a "globally distributed team" of employees and agents in over a dozen countries around the world.[1]  According to their LinkedIn profile pages, there are at least 9 Scrapinghub employees in the United States, 3 of whom are located in the San Francisco Bay Area, including Scrapinghub's Head of System Administration and Support.[2]  In addition, Scrapinghub has had several prior employees located in this judicial

---

[1] https://Scrapinghub.com/about/.

[2] *See* https://www.linkedin.com/in/ganeshra/ (Scrapinghub Head of System Administration and Head of Support, located in San Francisco Bay Area); https://www.linkedin.com/in/ludovicagonella/ (Scrapinghub data scientist, located in San Jose); https://www.linkedin.com/in/marvensanchez/ (Scrapinghub software developer, located in San Francisco Bay Area).

1  district, including its Vice President of Business Development.[3]  Scrapinghub has stated that "we

2  are able to hire top talent not otherwise available in any single location, be it Montevideo, Cork or

3  even San Francisco."[4]

4        16.      Scrapinghub also has created a LinkedIn SlideShare account, which has allowed the

5  company to share and present its presentations with the world.

6        17.      Further, Scrapinghub has maintained a LinkedIn "Company Page," where it has

7  actively posted information about the company (such as news and job postings), with nearly 70

8  posts to date, and where it has over 1,000 LinkedIn member followers.[5]

9        18.      Defendant Hoffman is the co-founder of Scrapinghub.  On information and belief,

10  he is a resident of Uruguay.  He is responsible in whole or in part for the wrongdoing alleged

11  herein, and in his capacity as a principal at Scrapinghub.

12        19.      Defendant Evans is the other co-Founder of Scrapinghub.  On information and

13  belief, he is a resident of Ireland.  He is responsible in whole or in part for the wrongdoing alleged

14  herein, and in his capacity as a principal at Scrapinghub.

15        20.      If discovery reveals that Defendants are working in concert with one or more other

16  persons, LinkedIn reserves the right to amend its complaint accordingly.

17  **FACTS**

18  **The LinkedIn Professional Network**

19        21.      LinkedIn is the world's largest professional network, with over 500 million

20  members worldwide and over 138 million members in the United States.  LinkedIn's mission is to

21  connect the world's professionals to make them more productive and successful.

22        22.      Through its proprietary platform, LinkedIn members are able to create, manage and

23  share their professional identities online, build and engage with their professional network, access

24  shared knowledge and insights, and find business opportunities, enabling them to be more

25

26  [3] *See, e.g.,* https://www.linkedin.com/in/gpuliatti/ (prior Scrapinghub VP of Business
Development, located in San Francisco Bay Area, worked at Scrapinghub from June 2014-April
2016).

27  [4] https://remote.co/company/Scrapinghub/.

28  [5] https://www.linkedin.com/company-beta/2450827/.

1  productive and successful.  LinkedIn's broader vision is to create economic opportunity for every

2  member of the global workforce.

3      23.    At the heart of LinkedIn's platform are its members, who create individual profiles

4  that serve as their professional profiles online.  LinkedIn is available at no cost to anyone who

5  wants to join and who agrees to the terms of LinkedIn's User Agreement, Privacy Policy, and

6  Cookie Policy.  LinkedIn counts executives from all 2015 Fortune 500 companies as members.

7      24.    LinkedIn members populate their profiles with a wide range of information

8  concerning their professional lives, including summaries (narratives about themselves), job

9  histories, skills, interests, educational background, professional awards, photographs, and other

10  information.

11      25.    The LinkedIn website is an original copyrighted work.  Among the significant

12  original elements of the LinkedIn website are the distinctive page layout, design, graphical

13  elements, and organization of member and company profile pages and the LinkedIn homepage and

14  news feed.

15      26.    LinkedIn has invested and plans to continue to invest substantial time, labor, skill,

16  and financial resources into the development and maintenance of the LinkedIn site.

17  **LinkedIn's Technical Safeguards and Security Measures**
**to Protect LinkedIn Against Unauthorized Access**

18

19      27.    LinkedIn works hard to protect the integrity and security of its network and

20  systems.  Among other things, it employs an array of technological safeguards and barriers

21  designed to prevent data scrapers, bots, and other automated systems from accessing and copying

22  its members' data on a large scale.

23      28.    One such safeguard is LinkedIn's FUSE system.  FUSE scans and imposes a limit

24  on the activity that an individual LinkedIn member may initiate on the site.  This limit is intended

25  to prevent would-be data scrapers utilizing automated technologies from quickly accessing a

26  substantial volume of (public or private) member profiles.

27      29.    Another safeguard is LinkedIn's Quicksand system.  Quicksand monitors the

28  patterns of webpage requests by LinkedIn members in order to identify non-human activity

indicative of scraping.  Quicksand can quickly challenge or restrict an account to prevent scrapers from continuing to access the site.

30.     Another protection measure is LinkedIn's Sentinel system, which scans, throttles, and at times blocks suspicious activity associated with particular accounts and IP addresses.[6]

31.     LinkedIn also monitors and blocks groups of IP addresses using its Org Block system.  This system includes an evolving manual list of known bad IP addresses and a machine-learned model that identifies groups of IP addresses serving large-scale scrapers.

32.     In addition, LinkedIn employs Member and Guest Request Scoring systems, which also restrict automated, non-human forms of access that facilitate scraping.  The Member Request Scoring System monitors page requests made by LinkedIn members while logged into their accounts.  If high levels of activity are detected for certain types of accounts, the member is logged out and may either be warned, restricted, or challenged with a CAPTCHA[7] in order to log back into LinkedIn.

33.     Similarly, the LinkedIn Guest Request Scoring system monitors and limits page requests made by users who are not logged into LinkedIn.  If unusual patterns or high levels of activity are detected, the user is redirected to LinkedIn's log-in page and is prevented from viewing additional LinkedIn pages while not logged in.

**LinkedIn's Prohibitions on Data Scraping and Other Unauthorized Conduct**

34.     LinkedIn's User Agreement also prohibits accessing and scraping LinkedIn's website through automated software and other technologies.

35.     LinkedIn's User Agreement explains that members, users, and visitors to the LinkedIn website must abide by certain restrictions in accessing and using the LinkedIn website. The current version of the User Agreement, effective October 23, 2014[8], states that "You agree that by clicking 'Join Now' 'Join LinkedIn', 'Sign Up' or similar, registering, accessing or using

---

[6] An IP address in this context is a numerical label assigned to each access point to the Internet.

[7] CAPTCHA is an acronym for "Completely Automated Public Turing test to tell Computers and Humans Apart."

[8] LinkedIn's User Agreement is attached hereto as Exhibit A.  *See also* ahttps://www.linkedin.com/legal/user-agreement.

1  our services …, you are entering into a legally binding agreement (even if you are using our

2  Services on behalf of a company)."

3         36.    Defendants Hoffman and Evans bound themselves to the User Agreement when

4  they created their individual member profiles on LinkedIn.  As demonstrated by the screenshot

5  below, a prospective member registers for an account by providing a first name, last name, email

6  address, and password, and through clicking  "Join Now," "agree[s] to LinkedIn's User

7  Agreement, Privacy Policy, and Cookie Policy," all of which are hyperlinked on the page.

8

9

10



11

12

13

14

15

16

17

18

19

20         37.    Scrapinghub also agreed to the LinkedIn User Agreement in setting up a company

21  SlideShare account on LinkedIn.  As demonstrated by the screenshot below, a prospective

22  SlideShare company account member registers for an account by providing an email address,

23  username, and password, and through clicking  "Join Now," "agree[s]" to LinkedIn's "User

24  Agreement, Privacy Policy, and Cookie Policy," all of which are hyperlinked on the page.

25  Scrapinghub registered for its account with the email address "growth@scrapinghub.com" and

26  username "scrapinghub."

27

28



38.     Further, Scrapinghub set up and has actively maintained a Company Page on LinkedIn, initially created by Defendant Hoffman.[9]  In so doing, Hoffman checked a box stating that "I verify that I am the official representative of this company and have the right to act on behalf of my company in the creation of this page."

39.     There are also dozens of current and former employees of Scrapinghub who maintain individual member profiles on LinkedIn who have agreed to the LinkedIn User Agreement.

40.     Section 8.2 of the User Agreement prohibits those who are bound to the agreement from engaging in any of the following activities:

- "Us[ing] … automated software, devices, scripts robots, other means or processes to access, 'scrape,' 'crawl' or 'spider' the Services or any related data or information";

- "Us[ing] bots or other automated methods to access the Services";

- "Scrap[ing] or copy[ing] profiles and information of others" through "crawlers, browser plugins and add-ons, and any other technology";

---

[9] Only LinkedIn members who have agreed to the LinkedIn User Agreement can create Company Pages.

- "Rent[ing], leas[ing], loan[ing], trad[ing], sell[ing]/re-sell[ing] access to the Services or related any information or data";

41.     Defendants for years have been on notice of and agreed to abide by these and other prohibitions against scraping and related conduct in registering and using LinkedIn's services.

42.     As demonstrated below, Defendants have engaged in a systematic pattern of conduct in violation and breach of each of these provisions of the User Agreement.

**Defendants' Unlawful Data Scraping Activities**

43.     Defendants have engaged in widespread scraping of LinkedIn and the creation of massive databases of professional profiles and company information.

44.     Scrapinghub's entire business revolves around crawling other websites and scraping data from them.  As its website states, "Need web data?  We can extract it for you, hassle-free. . . . You get the data you need, the way you want it.  Save time and money by hiring the web scraping experts."[10]

45.     Scrapinghub's website further states that it has "web crawling experts" and that its experts "know how to work around" security features such as "[b]ot countermeasures, sloppy code, A/B tests, and other challenges."  It goes on to state that for sites that are "popular or difficult to crawl," Scrapinghub will "collect their data ourselves so you don't need to."  Below is a screenshot of the website:

//

---

[10] https://scrapinghub.com/data-services/.

## DATA AS A SERVICE

Our **web crawling experts** can help if you don't have the time or the expertise to crawl a site. You'll be in excellent hands. We're the **creators and the main maintainers of Scrapy**, the most popular web scraping framework written in Python.

Some sites are so popular or difficult to crawl that we collect their data ourselves so you don't need to. Get in touch if you're thinking about scraping such a site. There's a good chance we're on it already. You'll **get instant access to the data you need** – without the hassle.

Other sites are just complex. Bot countermeasures, sloppy code, A/B tests, and other challenges can get in your way when collecting the data you need. Our experts know how to work around them. **Save time and money** by letting us tackle those complex crawls for you.



[11]

46.     Similarly, in response to the question on Quora.com (where users can post questions and seek responses), "How do you crawl" a website and "bypass the bot protection?," Hoffman responded: "You don't … [Y]ou won't have much luck crawling them at scale.   You'd be better of contacting a professional agency (like Scrapinghub, the place where I work), provided you have the budget."[12]

47.     LinkedIn is one of the websites Scrapinghub actively scrapes on a regular basis.  Its promotional materials provided to prospective customers explain that it has a "Linkedin People Dataset," which "contains the publicly available data for LinkedIn people profiles grouped by country.  It consists of nearly 300 million records."  The dataset contains "user information like name, age and location" as well as "professional details like current job, previous work experience, skills, education and interest."  It advertises its ability to deliver this illicitly obtained LinkedIn data to customers "to Azure Blobs, Google Drive, Google Storage Bucket, or to an Amazon S3 bucket,"[13] all of which are cloud storage services.  A screenshot of this material is below:

---

[11] https://scrapinghub.com/.

[12] https://www.quora.com/How-do-you-crawl-Crunchbase-and-bypass-the-bot-protection.

[13] LinkedIn in fact initially discovered this dataset because it was posted by an individual who LinkedIn now knows to be a Scrapinghub customer on a publicly-accessible cloud computing server.



scrapinghub

# Linkedin People Dataset

## About this dataset

This dataset contains the publicly available data for LinkedIn people profiles grouped by country. It consists of near 300 million records for Linkedin users from all around the world.

## What's in it?

The data includes basic user information like name, age and location, and also professional details like current job, previous work experience, skills, education and interests. For more details please refer to the Schema section where you can find the full schema.

Note that we only collect the data available on public profiles. Namely, we do not collect any private data. To confirm which data is available on a LinkedIn public profile, open the page using your browser's incognito mode.

## Delivery

Each periodic crawl takes between 4 and 6 weeks and we can deliver the data to Azure Blobs, Google Drive, Google Storage Bucket or to an Amazon S3 bucket that you provide.

48.     Scrapinghub has claimed that it scrapes data from LinkedIn "every two months."  In promotional material, a screenshot of which is below, Scrapinghub claims that it has scraped data from LinkedIn on at least thirty-two separate occasions since October 2014, and continuing through at least December 2016:



## Historical Snapshots

We have data snapshots from the following dates:

| | | | | | |
|---|---|---|---|---|---|
| 2014-10-01 | 2014-11-01 | 2014-12-01 | 2015-01-01 | 2015-02-11 | 2015-03-01 |
| 2015-01-01 | 2015-02-11 | 2015-03-01 | 2015-04-01 | 2015-05-01 | 2015-05-14 |
| 2015-04-01 | 2015-05-01 | 2015-05-14 | 2015-06-01 | 2015-07-01 | 2015-08-10 |
| 2015-06-01 | 2015-07-01 | 2015-08-10 | 2015-08-19 | 2015-09-06 | 2015-10-04 |
| 2015-08-19 | 2015-09-06 | 2015-10-04 | 2015-11-04 | 2015-12-04 | 2016-01-06 |
| 2015-11-04 | 2015-12-04 | 2016-01-06 | 2016-02-06 | 2016-03-01 | 2016-04-05 |
| 2016-02-06 | 2016-03-01 | 2016-04-05 | 2016-05-04 | 2016-05-16 | 2016-06-04 |
| 2016-05-04 | 2016-05-16 | 2016-06-04 | 2016-07-04 | 2016-08-04 | 2016-09-04 |
| 2016-07-04 | 2016-08-04 | 2016-09-04 | 2016-10-05 | 2016-11-06 | 2016-11-09 |
| 2016-10-05 | 2016-11-06 | 2016-11-09 | 2016-12-06 | 2016-12-07 | |
| 2016-12-06 | 2016-12-07 | | | | |

49.     Scrapinghub boasts of its ability to circumvent LinkedIn's technical protection measures in its marketing materials.  In emails sent to a prospective customer, a Scrapinghub sales representative explained that "Linkedin has very sophisticated bot counter-measures and several customers were not successful in crawling Linkedin themselves even after spending more than $50k/year without getting the required data before they came to us."  The sales representative then explained how Scrapinghub was able to circumvent LinkedIn's technical restrictions: "we have worked around crawling Linkedin using proxy techs, splash, session/cookie handling, etc., which is very complicated and we now crawl Linkedin every 2 months."  He goes on to offer "ready datasets both for Linkedin companies and Linkedin public profiles."  A screenshot of this communication is below:

**Neeraj Chaudhry** <neeraj@scrapinghub.com>                    Mon, Mar 21, 2016 at 4:55 PM
To: ███████████████

Hi ████████

I understand that you have requirement to get data from Linkedin.

To share with you, Linkedin has very sophisticated bot counter-measures and several customers were not successful in crawling Linkedin themselves even after spending more than $50k/year without getting the required data before they came to us.

Where as we have worked around crawling Linkedin using proxy techs, splash, session/cookie handling, etc., which is very complicated  and we now crawl Linkedin every 2 months and currently offer ready datasets both for Linkedin companies and Linkedin public profiles:

- **Linkedin public profiles** dataset has 270M profiles. You can check the sample here. It is priced for one-time dataset dump at USD ████

- **Linkedin companies profiles** dataset has 7.5M+ profiles. You can check the sample data here. It is priced at one-time USD ████

Apart from above datasets, we also offer datasets from Linkedin Universities and also public profiles datasets from Indeed, Viadeo, Xing, Stackoverflow, Github and many others.

Please let me know your requirements so that I can proposes a appropriate solution for you.

**Neeraj Chaudhry**
Technical Sales, Scrapinghub
☎ +1-415-842-9990  Ⓢ neeraj.scrapinghub

50.     In a follow-up email, the same sales representative stated that circumventing LinkedIn's technical measures has taken intense effort from Scrapinghub.  It has had to "provision[] more infrastructure" and put in "lots of maintenance work owing to site changes."  He

even states that they have at least one engineer working on Scrapinghub's efforts with LinkedIn

full time.  Below is a screenshot of this communication:


**Neeraj Chaudhry** <neeraj@scrapinghub.com>                                    Fri, Jun 24, 2016 at 2:26 PM
To: ████████████████████

Hi ██████

If any companies buys dataset from us, then they cannot re-sell it "AS-IS" as per our terms and conditions
agreed in the contract.

If you are looking for all ~292M public profiles dataset, then it doesn't matter how many data fields you
need as the effort to crawl such a large data is same whether we scrape 2 fields or 10 fields and hardly
varies on data crunching time which is close to 8 weeks to crawl all ~292M profiles. Please see the
intricacies involved in getting this data:

- Large sites like Linkedin  and others have now introduced very sophisticated bot counter-measures
  that we need to work around using proxy techs, Splash, session/cookie handling, etc., which is
  very complicated
- For scalability, we have provisioned more infrastructure, which is not at all easy to reproduce
- Involves very important QA steps, both on the coverage and on the quality fronts, which is also
  complicated
- Requires lots of maintenance work owing to site changes **(e.g. LinkedIn is a full time engineer or
  two for all practical purposes if you also count the infrastructure)**
- Big-data related work, in the case of the larger datasets, because lifting and moving the data
  around is not at all easy, e.g. it takes ~8h to crunch LI profiles from the US, and that's with multiple
  machines working in parallel

If you plan to go for 1 year subscription, then we can offer 30% discount.

Let me know on next steps.


**Neeraj Chaudhry**
Technical Sales, Scrapinghub
📞 +1-415-842-9990  🅂 neeraj.scrapinghub

51.     Not only do Defendants engage in illicit scraping on a regular basis, but they

themselves have publicly exhibited significant doubt about the legality of Scrapinghub's business.

In a presentation that Scrapinghub gave at a conference in 2015, Scrapinghub itself stated that it

thought that "Legalities about scraping is a legal gray area" and that "Scraping public data is

somewhat legal."  It also expressly acknowledged that "Some websites explicitly prohibit

scraping" and that websites should "Always obey robots.txt."  As explained above, LinkedIn's

User Agreement expressly prohibits scraping, which Defendants were on notice of and agreed to,

and LinkedIn employs a robots.txt file instructing websites like Scrapinghub not to access and

scrape its site.  Below is a screenshot of this presentation:

SECOND AMENDED COMPLAINT



52.     As described above, Defendants were well aware that "Linkedin has very sophisticated bot counter-measures" to prevent against unauthorized access to and scraping of the LinkedIn website.  During periods of time since at least as early as October 2014, Defendants, on information and belief, intentionally circumvented LinkedIn's technical barriers by creating and/or utilizing a highly coordinated and automated network of computers (a "botnet") distributed across dozens of Internet Service Providers ("ISPs") and networks, and many thousands of IP addresses. These ISPs and networks span the range of local, regional, and national providers in this country and abroad.

---

[14] https://www.slideshare.net/rdowinton/scrapinghub-pycon-philippines-2015.

53.     In engaging in this conduct, Defendants have accessed LinkedIn's website and scraped data from many LinkedIn pages in circumvention of several of LinkedIn's technological defenses and in violation of the access and use restrictions in LinkedIn's User Agreement.

54.     First, through utilizing large sets of distributed networks, Defendants have circumvented the technical restrictions that LinkedIn places on the amount of activity users may initiate, such as FUSE, Quicksand, and the Member and Guest Request Scoring systems.  This has allowed them to engage in highly automated queries, scraping, and other conduct which for any particular account or user are less than the total number of permitted activities over a period of time.  Such activity circumvents LinkedIn's automated restriction levels, yet allows Defendants to engage in equivalent levels of banned automated conduct.

55.     Further, Defendants have circumvented LinkedIn's technical protection measures that monitor and block suspicious activity associated with particular sets of IP addresses, including Sentinel and the Org Block system.  This also has allowed Defendants to mask their true identities.

56.     In addition, in creating and registering their member accounts, and in creating and maintaining a Company Page, Defendants were on notice of and agreed to abide by the access and use restrictions in LinkedIn's User Agreement.  Defendants' conduct, as described above, has violated several provisions of the User Agreement, including that LinkedIn members and users would not use "automated software, devices, scripts robots, other means or processes to access, 'scrape,' 'crawl' or 'spider' the Services or any related data or information."  Defendants were on notice of and knowingly violated these access and use restrictions in engaging in their unlawful conduct.

57.     LinkedIn has obtained information from Scrapinghub's customers that these customers obtained data scraped from LinkedIn from Scrapinghub.  Scrapinghub communications and promotional material provided to those customers make clear that Scrapinghub is regularly scraping data from LinkedIn and circumventing LinkedIn's technical protection measures.

58.     Defendants did not have permission or authorization from any LinkedIn members, or from LinkedIn, at any point in time to access their member profiles and scrape their data on LinkedIn through these automated technologies, and Defendants knew this: they knew that

LinkedIn employed "sophisticated" technical barriers, and intentionally designed software and/or other code to circumvent LinkedIn's barriers.

59.     LinkedIn has continued to implement additional technical safeguards to protect against unauthorized access to the LinkedIn site.

### Co-Founders Hoffman and Evans's Active Participation in and Control of Defendants' Unlawful Activities

60.     Defendants Hoffman and Evans are co-founders of Scrapinghub.  Hoffman and Evans have been and are the primary actors in the activities of Scrapinghub that give rise to LinkedIn's claims; they direct, control, ratify, and participate in Scrapinghub's unlawful activities.

61.     At all relevant times, Hoffman was Scrapinghub's co-founder and a top executive. On Scrapinghub's website, Hoffman is described as the co-creator and lead developer for Scrapinghub's scraping software.[15]

62.     Hoffman has specifically touted the ability of Scrapinghub's clients to "scrape people profiles from social networks" or "monitor specific company pages from social networks."[16]  He has also bragged about Scrapinghub's ability to "crawl[] sites with millions of pages."[17]

63.     At all relevant times, Evans also was Scrapinghub's co-founder and a top executive.[18]  In an interview he gave in 2016, Evans stated that he started Scrapinghub to "make it easy for other companies to get web data.  That was what gave birth to Scrapinghub."[19]

### Defendants Have Caused and Threaten Ongoing and Irreparable Injury to LinkedIn

64.     By engaging in the activities described above, Defendants have caused, and if not halted will continue to cause, ongoing and irreparable harm to LinkedIn, in a variety of ways,

---

[15] https://Scrapinghub.com/about/.

[16] https://www.quora.com/What-are-examples-of-how-real-businesses-use-web-scraping.

[17] https://www.quora.com/How-can-you-crawl-a-site-with-millions-of-pages.

[18] https://Scrapinghub.com/about/.

[19] http://www.sramanamitra.com/2016/05/25/bootstrapping-using-services-from-ireland-shane-evans-ceo-of-Scrapinghub-part-3/.

1  including ongoing and irreparable harm to its consumer goodwill.  Defendants claim to have a

2  dataset encompassing millions of LinkedIn professional profiles that they make available for sale.

3  Defendants should be enjoined, and required to delete this data and cease selling it permanently.

4        65.     LinkedIn's members entrust to LinkedIn their professional histories and interests on

5  LinkedIn's site.  LinkedIn will suffer ongoing and irreparable harm to its consumer goodwill and

6  trust, which LinkedIn has worked hard for years to earn and maintain, if Defendants' conduct

7  continues.

8        66.     Defendants' misconduct also has imposed significant strains on LinkedIn's servers,

9  including through the use of automated technologies to view many LinkedIn pages.  The increased

10 strain on LinkedIn's servers has impaired and reduced LinkedIn's ability to serve legitimate

11 LinkedIn users.

12       67.     The harm to LinkedIn's computer systems, including increased strain on its network

13 servers, and the significant human, financial, and technical resources, including hundreds of hours

14 of employee time, LinkedIn has expended investigating and responding to Defendants' unlawful

15 activities, has been at a cost to LinkedIn well in excess of $5,000.

16 **FIRST CLAIM FOR RELIEF**

17 **Computer Fraud and Abuse Act, 18 U.S.C. §§1030 et seq.**

18       68.     LinkedIn realleges and incorporates by reference all of the preceding paragraphs.

19       69.     LinkedIn's computers and servers are involved in interstate and foreign commerce

20 and communication, and are protected computers under 18 U.S.C. §1030(e)(2).

21       70.     Defendants knowingly and intentionally accessed LinkedIn's computers and servers

22 without authorization or in excess of authorization.  They have circumvented various technological

23 barriers LinkedIn has employed to protect its computers, servers, and member data against

24 unauthorized access – including FUSE, Sentinel, Org Block, the Member and Guest Request

25 Scoring systems, and/or additional safeguards – and have violated access restrictions of LinkedIn's

26 User Agreement.

27       71.     After accessing LinkedIn's computers and servers without authorization or in

28 excess of authorization, Defendants accessed, obtained and used valuable information from

LinkedIn's computers and servers in transactions involving interstate or foreign communications in violation of 18 U.S.C. § 1030(a)(2).  This information includes, among other things, the contents of many LinkedIn profiles, and this use includes, among other things, distributing that content to others.

72.     Defendants knowingly, willfully, and with an intent to defraud, accessed LinkedIn's computers and servers without authorization or in excess of authorization, including through masking Defendants' identity to LinkedIn's systems, and thereby furthered Defendants' intended fraud and obtained valuable information from LinkedIn's computers and servers that Defendants used to obtain something of value in violation of 18 U.S.C. § 1030(a)(4).

73.     LinkedIn has suffered damage and loss by reason of these violations, including, without limitation, harm to LinkedIn's computer systems, expenses associated with being forced to investigate and respond to the unauthorized access and abuse of its computers and servers, and other losses and damage in an amount to be proven at trial, in excess of $5,000 aggregated over a one-year period.

74.     In addition, LinkedIn has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants. Accordingly, LinkedIn is entitled to injunctive relief.

## SECOND CLAIM FOR RELIEF

**California Comprehensive Computer Access and Fraud Act, Cal. Penal Code §§ 502 et seq.**

75.     LinkedIn realleges and incorporates by reference all of the preceding paragraphs.

76.     LinkedIn's computers and servers are computers, computer systems, and/or computer networks within the meaning of Cal. Penal Code § 502(b).

77.     Defendants have circumvented various technological barriers LinkedIn has employed to protect its computers, servers, and data against unauthorized access and use – including FUSE, Sentinel, Org Block, the Member and Guest Request Scoring systems, and/or additional safeguards – and have violated access and use restrictions of LinkedIn's User Agreement.

78.     Defendants wrongfully obtained and used valuable information from LinkedIn's website.

79.     Defendants knowingly and without permission accessed, took, copied and made use of data and files from LinkedIn's computers, computer systems, and/or computer networks, including to wrongfully control and/or obtain such data, in violation of Cal. Penal Code §§ 502(c)(1) & (2).

80.     Defendants knowingly and without permission accessed or caused to be accessed LinkedIn's computers, computer systems, and/or computer networks in violation of Cal. Penal Code § 502(c)(7).

81.     Defendants knowingly and without permission disrupted or caused the disruption of LinkedIn's computer services to authorized users of LinkedIn's computers, computer systems, and/or computer networks in violation of Cal. Penal Code § 502(c)(5).

82.     As a direct and proximate result of Defendants' unlawful conduct, Defendants have caused damage to LinkedIn in an amount to be proven at trial.  LinkedIn is also entitled to recover its reasonable attorney's fees pursuant to Cal. Penal Code § 502(e).

83.     LinkedIn believes that Defendants' acts were willful and malicious, including that Defendants' acts described above were done with the deliberate intent to harm LinkedIn.  LinkedIn is therefore entitled to punitive damages.

84.     In addition, LinkedIn has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants. Accordingly, LinkedIn is entitled to injunctive relief.

### THIRD CLAIM FOR RELIEF

**The Digital Millennium Copyright Act, 17 U.S.C. §§ 1201 et seq.**

85.     LinkedIn realleges and incorporates by reference all of the preceding paragraphs.

86.     LinkedIn employs various layers of technological protections – including FUSE, Sentinel, Org Block, the Member and Guest Request Scoring systems, and/or additional safeguards – to protect LinkedIn's computers, servers, and data from unauthorized access and copying, including through automated crawling and scraping technologies.  These technological protection

measures effectively control access to the copyrighted materials on LinkedIn's servers, including the LinkedIn website, member profile pages, Company Pages, and the LinkedIn homepage and news feed, and protect LinkedIn's and its members' exclusive rights in these copyrighted materials.  These technological protection measures scan and monitor accessing systems and require the application of information to confirm the absence of automated behavior patterns, server-origination data, blocked IP addresses, and/or additional information, with the authority of LinkedIn (on behalf of itself and its members), to gain access to the copyrighted materials on LinkedIn's servers.

87.     Despite LinkedIn's best efforts to protect the LinkedIn site from Defendants' unauthorized access, Defendants circumvented LinkedIn's technological measures – including FUSE, Sentinel, Org Block, the Member and Guest Request Scoring systems, and/or additional safeguards – and gained unauthorized access to copyrighted materials, including without limitation the copyrighted LinkedIn website and member profile pages, in violation of 17 U.S.C. § 1201(a)(1).

88.     As a result of Defendants' wrongful acts, LinkedIn has suffered, is continuing to suffer, and will continue to suffer damages to be proven at trial.  LinkedIn is further entitled to all profits attributable to Defendants' wrongful acts to be proven at trial pursuant to 17 U.S.C. § 1201(c).

89.     Alternatively, upon its election at any time before final judgment is entered, LinkedIn is entitled to recover statutory damages from Defendants pursuant to 17 U.S.C. § 1203, ranging from a minimum of $2,500 up to $25,000, for each act of circumvention committed by Defendants.  At a minimum, Defendants have engaged in thousands of distinct acts of circumvention.

90.     Defendants' circumventions also have caused LinkedIn irreparable harm.  Unless restrained and enjoined, Defendants will continue to commit such acts.  LinkedIn's remedies at law are not adequate to compensate it for these inflicted and threatened injuries, and thus LinkedIn is entitled to injunctive relief as provided by 17 U.S.C. § 1203.

1

## **FOURTH CLAIM FOR RELIEF**

2

### **Breach of Contract**

3      91.      LinkedIn realleges and incorporates by reference all of the preceding paragraphs.

4      92.      Use of the LinkedIn website and use of LinkedIn services are governed by and

5  subject to the User Agreement.

6      93.      LinkedIn members are presented with the User Agreement and must affirmatively

7  accept and agree to the User Agreement to register for a LinkedIn account.

8      94.      At all relevant times, LinkedIn also prominently displayed a link to the User

9  Agreement on LinkedIn's homepage.

10      95.      Defendants were on notice of and agreed to the User Agreement when they created

11  their member profiles on LinkedIn and extensively used the LinkedIn website, including through

12  the creation and maintenance of a LinkedIn SlideShare account and LinkedIn Company Page.

13      96.      The User Agreement is enforceable and binding on Defendants.

14      97.      Defendants repeatedly accessed the LinkedIn website with knowledge of the User

15  Agreement and all of its prohibitions.  Despite their knowledge of the User Agreement and its

16  prohibitions, Defendants accessed and continue to access the LinkedIn website to, among other

17  things, scrape, crawl, or use other automated technology or software to gain access to the LinkedIn

18  website without the consent of LinkedIn.

19      98.      Defendants' actions, as described above, have willfully, repeatedly, and

20  systematically breached the User Agreement.

21      99.      LinkedIn has performed all conditions, covenants, and promises required of it in

22  accordance with the User Agreement.

23      100.      Defendants' conduct has damaged LinkedIn, and caused irreparable and

24  incalculable harm and injury to LinkedIn.

25      101.      LinkedIn has since terminated its contractual relationship with Defendants.

26      102.      LinkedIn is entitled to compensatory damages for Defendants' past breaches of the

27  User Agreement, and/or other equitable relief.

28

**FIFTH CLAIM FOR RELIEF**

**Trespass**

103.    LinkedIn realleges and incorporates by reference all of the preceding paragraphs.

104.    Defendants intentionally, and without authorization, accessed and interacted with LinkedIn, including without limitation, LinkedIn's website, computer systems and servers.

105.    Through disregarding the prohibitions set forth in LinkedIn's User Agreement to which they been on notice of and expressly consented to, and in circumvention of various technical barriers, Defendants unlawfully gained access to and interfered and intermeddled with LinkedIn, its website, computer systems, and its servers.

106.    Defendants' unauthorized interference with and access to LinkedIn, its website, computer systems, and its servers, among other harms, has reduced LinkedIn's capacity to service its users because it has occupied, used, and placed strain on LinkedIn's systems and resources.

107.    Defendants' conduct constitutes trespass that has harmed and will continue to harm LinkedIn.  As a result, LinkedIn has been and will continue to be damaged.

108.    LinkedIn has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants.  Accordingly, LinkedIn is entitled to injunctive relief.

**SIXTH CLAIM FOR RELIEF**

**Misappropriation**

109.    LinkedIn realleges and incorporates by reference all of the preceding paragraphs.

110.    LinkedIn has invested substantial time, labor, skill, and financial resources into the creation and maintenance of LinkedIn, its computer systems and servers, including system and server capacity, as well as the content on the LinkedIn website, which is time sensitive. Defendants have invested none of their own time and resources into developing and building the LinkedIn website and platform.

111.    Disregarding the prohibitions set forth in LinkedIn's User Agreement to which they have been on notice of and expressly consented to, and in circumvention of various technical

1  barriers, Defendants, without authorization, have wrongfully accessed LinkedIn's website,

2  computer systems and servers, and obtained data from the LinkedIn site.

3        112.   In appropriating and using this data, Defendants did not have to make the

4  substantial investment in time, labor, skill, and financial resources made by LinkedIn in

5  developing the LinkedIn website and platform.  In other words, Defendants have reaped what they

6  have not sown.  Defendants' use of LinkedIn's computer systems and servers, including member

7  data from the LinkedIn site and system and server capacity, constitutes free-riding on LinkedIn's

8  substantial investment of time, effort, and expense.

9        113.   As a result of this misappropriation, LinkedIn has been forced to expend additional

10  time and resources, including but not limited to, investigating and responding to Defendants'

11  activities, and Defendants have been able to exploit and benefit from LinkedIn's substantial

12  investment of time, effort, and expense.

13        114.   LinkedIn has been and will continue to be damaged as the result of Defendants' acts

14  of misappropriation.

15        115.   LinkedIn has suffered and will continue to suffer irreparable injury, and its remedy

16  at law is not itself adequate to compensate it for injuries inflicted by Defendants.

17                                **PRAYER FOR RELIEF**

18        WHEREFORE, LinkedIn prays that judgment be entered in its favor and against

19  Defendants, as follows:

20        1.   A permanent injunction enjoining and restraining all Defendants, their employees,

21  representatives, agents, and all persons or entities acting in concert with them during the pendency

22  of this action and thereafter perpetually from

23              a.   accessing or using LinkedIn's website, servers, systems, and any data

24  displayed or stored therein, including through scraping and crawling technologies, for any

25  commercial purpose whatsoever; and

26              b.   extracting and copying data appearing on LinkedIn's website to their own

27  servers or systems or those controlled by them;

28        2.   An order requiring Defendants to destroy all documents, data, and other items,

electronic or otherwise, in their possession, custody, or control, that were wrongfully extracted and copied from LinkedIn's website, along with any data that Defendants have inferred as a result of data wrongfully extracted and copied from LinkedIn's website;

3.     An award to LinkedIn of damages, including, but not limited to, compensatory, statutory, profits of Defendants, and/or punitive damages, as permitted by law;

4.     An award to LinkedIn of its costs of suit, including, but not limited to, reasonable attorney's fees, as permitted by law; and

5.     Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

LinkedIn hereby demands a jury trial of all issues in the above-captioned action that are triable to a jury.

DATED:  May 31, 2017                    MUNGER, TOLLES & OLSON

By:  */s/ Jonathan H. Blavin*
      JONATHAN H. BLAVIN

      Attorneys for Plaintiffs LinkedIn Corporation and
      LinkedIn Ireland Unlimited Company

# Exhibit A



  

SlideShare, a content sharing platform, and LinkedIn Pulse, a news reading application, are part of the LinkedIn family.

# User Agreement

Welcome, and thanks for using LinkedIn.com, SlideShare.net, Pulse and/or other LinkedIn services and apps! When you use our products and services, you're agreeing to our terms, so please take a few minutes to read over the User Agreement below.

Note: You are entering into a legally binding agreement.



# 1. Introduction

We will update our User Agreement soon. Please see **the preview**.

We are a social network and online platform for professionals.

## 1.1. Purpose

Our mission is to connect the world's professionals to allow them to be more productive and successful. Our services are designed to promote economic opportunity for our members by enabling you and millions of other professionals to meet, exchange ideas, learn, and find opportunities or employees, work, and make decisions in a network of trusted relationships.

## 1.2. Agreement

When you use our Services (including Slideshare and Pulse), you are entering into a legal agreement and you agree to all of these terms.

You also agree to our Privacy Policy, which covers how we collect, use, share, and store your personal information.

You agree that by clicking "Join Now" "Join LinkedIn", "Sign Up" or similar, registering, accessing or using our services (including LinkedIn, SlideShare, Pulse, our related mobile apps, developer platforms, premium services, or any content or information provided as part of these services, collectively, "Services"), you are entering into a legally binding agreement (even if you are using our Services on behalf of a company). If you reside in the United States, your agreement is with LinkedIn Corporation and if you reside outside of the United States, your agreement is with LinkedIn Ireland Unlimited Company (each, "LinkedIn" or "we").

This "Agreement" includes this User Agreement and the Privacy Policy, and other terms that will be displayed to you at the time you first use certain features (such as starting a "Group," downloading one of our software applications or purchasing advertisements or InMails™), as may be amended by LinkedIn from time to time. If you do not agree to this Agreement, do NOT click "Join Now" (or similar) and do not access or otherwise use any of our Services.

Registered users of our Services are "Members" and unregistered users are "Visitors". This Agreement applies to both.

# 2. Obligations

## 2.1. Service Eligibility

> Here are some promises you make to us in this Agreement:
>
> You're eligible to enter into this Agreement and you are at least our "Minimum Age."

To use the Services, you agree that: (1) you must be the "Minimum Age" (defined below) or older; (2) you will only have one LinkedIn account (and/or one SlideShare or Pulse account, if applicable), which must be in your real name; and (3) you are not already restricted by LinkedIn from using the Services.

"Minimum Age" means (a) 18 years old for the People's Republic of China, (b) 16 years old for the Netherlands, (c) 14 years old for the United States, Canada, Germany, Spain, Australia and South Korea, and (d) 13 years old for all other countries. However, if law requires that you must be older in order for LinkedIn to lawfully provide the Services to you (including the collection, storage and use of your information) then the Minimum Age is such older age. The Services are not for use by anyone under the age of 13.

## 2.2. Your Membership

> You'll keep your password a secret.
>
> You will not share an account with anyone else and will follow our rules and the law.

As between you and others, your account belongs to you. You agree to: (1) try to choose a strong and secure password; (2) keep your password secure and confidential; (3) not transfer any part of your account (e.g., connections, groups) and (4) follow the law and the Dos and Don'ts below. You are responsible for anything that happens through your account unless you close it or report misuse.

Note that for Premium Services purchased by another party for you to use (e.g. Recruiter seat bought by your employer), the party paying for the Premium Service controls such an account (which is different from your personal account) and may terminate your access to it.

## 2.3 Payment

> You'll honor your payment obligations and you are okay with us storing your payment information. Also, there may be fees and taxes that are added to our prices.
>
> We don't guarantee refunds.

If you purchase any of our paid Services ("Premium Services"), you agree to pay us the applicable fees and taxes. Failure to pay these fees may result in the termination of your subscription. Also:

- Your purchase may be subject to foreign exchange fees or differences in prices based on location (e.g. exchange rates).

- You authorize us to store and continue billing your payment method (e.g. credit card) even after it has expired, to avoid interruptions in your service (e.g. subscriptions) and to facilitate easy payment for new services.

- You must pay us for applicable fees and taxes unless you cancel the Premium Service, in which case you agree to still pay these fees through the end of the applicable subscription period. Learn how to **cancel or change** your Premium Services and read about LinkedIn's **refund policy**.

- Taxes are calculated based on the billing information that you provide us at the time of purchase.

For LinkedIn, you can get a copy of your invoice through your account settings under "**Purchase History**" for SlideShare you can request your invoice through **Customer Support**.

## 2.4. Notices and Service Messages

> You're okay with us using our websites, mobile apps, and email to provide you with important notices. This Agreement applies to mobile applications as well. Also, you agree certain additional information can be shared with us.
>
> If the contact information you provide isn't up to date, you may miss out on these notices.

You agree that we may provide notices to you in the following ways: (1) a banner notice on the Service, or (2) an email sent to an address you provided, or (3) through other means including mobile number, telephone, or mail. You agree to keep your **contact information** up to date.

Please review your **LinkedIn.com** and **Slideshare.net** settings to **control and limit** what kind of messages you receive from us.

## 2.5. Messages and Sharing

> When you share information, others can see, copy and use that information.

Our Services allow messaging and sharing of information in many ways, such as your profile, slide deck, links to news articles, job postings, InMails and blogs. Information and content that you share or post may be seen by other Members or, if public, by Visitors. Where we have made settings available, we will honor the choices you make about who can see content or information (e.g., sharing to a group instead of your network, changing the default setting for SlideShare content from public to a more restricted view, limiting your profile visibility, or not letting people know when you change your profile,

make recommendations or follow companies). Note that other activities, such as applying for a job or sending an InMail, are by default private, only visible to the addressee(s).

We are not obligated to publish any information or content on our Service and can remove it in our sole discretion, with or without notice.

---

# 3. Rights and Limits

## 3.1. Your License to LinkedIn

You own all of the content, feedback, and personal information you provide to us, but you also grant us a non-exclusive license to it.

We'll honor the choices you make about who gets to see your information and content.

You promise to only provide information and content that you have the right to share, and that your LinkedIn profile will be truthful.

As between you and LinkedIn, you own the content and information that you submit or post to the Services and you are only granting LinkedIn the following non-exclusive license: A worldwide, transferable and sublicensable right to use, copy, modify, distribute, publish, and process, information and content that you provide through our Services, without any further consent, notice and/or compensation to you or others. These rights are limited in the following ways:

1. You can end this license for specific content by deleting such content from the Services, or generally by closing your account, except (a) to the extent you shared it with others as part of the Service and they copied or stored it and (b) for the reasonable time it takes to remove from backup and other systems.

2. We will not include your content in advertisements for the products and services of others (including sponsored content) to others without your separate consent. However, we have the right, without compensation to you or others, to serve ads near your content and information, and your comments on sponsored content may be visible as noted in the Privacy Policy.

3. We will get your consent if we want to give others the right to publish your posts beyond the Service. However, other Members and/or Visitors may access and share your content and information, consistent with your settings and degree of connection with them.

4. While we may edit and make formatting changes to your content (such as translating it, modifying the size, layout or file type or removing metadata), we will not modify the meaning of your expression.

5. Because you own your content and information and we only have non-exclusive rights to it, you may choose to make it available to others, including under the terms of a Creative Commons license.

You agree that we may access, store and use any information that you provide in accordance with the terms of the Privacy Policy and your privacy settings.

By submitting suggestions or other feedback regarding our Services to LinkedIn, you agree that LinkedIn can use and share (but does not have to) such feedback for any purpose without compensation to you.

You agree to only provide content or information if that does not violate the law nor anyone's rights (e.g., without violating any intellectual property rights or breaching a contract). You also agree that your profile information will be truthful. LinkedIn may be required by law to remove certain information or content in certain countries.

## 3.2. Service Availability

> We may change or discontinue any of our Services. We can't promise to store or keep showing any information and content you've posted.

We may change, suspend or end any Service, or change and modify prices prospectively in our discretion. To the extent allowed under law, these changes may be effective upon notice provided to you.

LinkedIn is not a storage service. You agree that we have no obligation to store, maintain or provide you a copy of any content or information that you or others provide, except to the extent required by applicable law and as noted in Section 3.1 of our Privacy Policy

## 3.3. Other Content, Sites and apps

> When you see or use others' content and information posted on our Services, it's at your own risk.
>
> Third parties may offer their own products and services through LinkedIn, and we aren't responsible for those third-party activities.

By using the Services, you may encounter content or information that might be inaccurate, incomplete, delayed, misleading, illegal, offensive or otherwise harmful. LinkedIn generally does not review content provided by our Members. You agree that we are not responsible for third parties' (including other Members') content or information or for any damages as result of your use of or reliance on it.

You are responsible for deciding if you want to access or use third party apps or sites that link from our Services. If you allow a third party app or site to authenticate you or connect with your LinkedIn account, that app or site can access information on LinkedIn related to you and your connections. Third party apps and sites have their own legal terms and privacy policies, and you may be giving others permission to use your information in ways we would not. Except to the limited extent it may be required by applicable law, LinkedIn is not responsible for these other sites and apps -- use these at your own risk. Please see Sections 2.6 and 2.7 of the Privacy Policy.

## 3.4. Limits

> We have the right to limit how you connect and interact on our Services.
>
> We're providing you notice about our intellectual property rights.

LinkedIn reserves the right to limit your use of the Services, including the number of your connections and your ability to contact other Members. LinkedIn reserves the right to restrict, suspend, or terminate your account if LinkedIn believes that you may be in breach of this Agreement or law or are misusing the Services (e.g. violating any Do and Don'ts).

LinkedIn reserves all of its intellectual property rights in the Services. For example, LinkedIn, SlideShare, LinkedIn (stylized), the SlideShare and "in" logos and other LinkedIn trademarks, service marks, graphics, and logos used in connection with LinkedIn are trademarks or registered trademarks of LinkedIn. Other trademarks and logos used in connection with the Services may be the trademarks of their respective owners.

# 4. Disclaimer and Limit of Liability

### 4.1. No Warranty

> This is our disclaimer of legal liability for the quality, safety, or reliability of our Services.

TO THE EXTENT ALLOWED UNDER LAW, LINKEDIN (AND THOSE THAT LINKEDIN WORKS WITH TO PROVIDE THE SERVICES) (A) DISCLAIM ALL IMPLIED WARRANTIES AND REPRESENTATIONS (E.G. WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, ACCURACY OF DATA, AND NONINFRINGEMENT); (B) DO NOT GUARANTEE THAT THE SERVICES WILL FUNCTION WITHOUT INTERRUPTION OR ERRORS, AND (C) PROVIDE THE SERVICE (INCLUDING CONTENT AND INFORMATION) ON AN "AS IS" AND "AS AVAILABLE" BASIS.

SOME LAWS DO NOT ALLOW CERTAIN DISCLAIMERS, SO SOME OR ALL OF THESE DISCLAIMERS MAY NOT APPLY TO YOU.

---

### 4.2. Exclusion of Liability

> These are the limits of legal liability we may have to you.

TO THE EXTENT PERMITTED UNDER LAW (AND UNLESS LINKEDIN HAS ENTERED INTO A SEPARATE WRITTEN AGREEMENT THAT SUPERSEDES THIS AGREEMENT), LINKEDIN (AND THOSE THAT LINKEDIN WORKS WITH TO PROVIDE THE SERVICES) SHALL NOT BE LIABLE TO YOU OR OTHERS FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, OR ANY LOSS OF DATA, OPPORTUNITIES, REPUTATION, PROFITS OR REVENUES, RELATED TO THE SERVICES (E.G. OFFENSIVE OR DEFAMATORY STATEMENTS, DOWN TIME OR LOSS, USE OR CHANGES TO YOUR INFORMATION OR CONTENT).

IN NO EVENT SHALL THE LIABILITY OF LINKEDIN (AND THOSE THAT LINKEDIN WORKS WITH TO PROVIDE THE SERVICES) EXCEED, IN THE AGGREGATE FOR ALL CLAIMS, AN AMOUNT THAT IS THE LESSER OF (A) FIVE TIMES THE MOST RECENT MONTHLY OR YEARLY FEE THAT YOU PAID FOR A PREMIUM SERVICE, IF ANY, OR (B) US $1000.

THIS LIMITATION OF LIABILITY IS PART OF THE BASIS OF THE BARGAIN BETWEEN YOU AND LINKEDIN AND SHALL APPLY TO ALL CLAIMS OF LIABILITY (E.G. WARRANTY, TORT, NEGLIGENCE, CONTRACT, LAW) AND EVEN IF LINKEDIN HAS BEEN TOLD OF THE POSSIBILITY OF ANY SUCH DAMAGE, AND EVEN IF THESE REMEDIES FAIL THEIR ESSENTIAL PURPOSE.

SOME LAWS DO NOT ALLOW THE LIMITATION OR EXCLUSION OF LIABILITY, SO THESE LIMITS MAY NOT APPLY TO YOU.

---

# 5. Termination

> We can each end this Agreement anytime we want.

LinkedIn or You may terminate this Agreement at any time with notice to the other. On termination, you lose the right to access or use the Services. The following shall survive termination:

- Our rights to use and disclose your feedback;

- Members' and/or Visitors' rights to further re-share content and information you shared through the Service to the extent copied or re-shared prior to termination;

- Sections 4, 6 and 7 of this Agreement;

- Any amounts owed by either party prior to termination remain owed after termination.

You can visit our Help Center to learn how to close your LinkedIn account, close your Pulse account, or close your Slideshare account.

---

# 6. Dispute Resolution

In the unlikely event we end up in a legal dispute, it will take place in California courts, applying California law.

You agree that the laws of the State of California, U.S.A., excluding its conflict of laws rules, shall exclusively govern any dispute relating to this Agreement and/or the Services. We both agree that all of these claims can only be litigated in the federal or state courts of Santa Clara County, California, USA, and we each agree to personal jurisdiction in those courts.

---

# 7. General Terms

Here are some important details about how to read the Agreement.

If a court with authority over this Agreement finds any part of it not enforceable, you and us agree that the court should modify the terms to make that part enforceable while still achieving its intent. If the court cannot do that, you and us agree to ask the court to remove that unenforceable part and still enforce the rest of this Agreement. To the extent allowed by law, the English version of this Agreement is binding and other translations are for convenience only. This Agreement (including additional terms that may be provided by us when you engage with a feature of the Services) is the only agreement between us regarding the Services and supersedes all prior agreements for the Services.

If we don't act to enforce a breach of this Agreement, that does not mean that LinkedIn has waived its right to enforce this Agreement. You may not assign or transfer this Agreement (or your membership or use of Services) to anyone without our consent. However, you agree that LinkedIn may assign this Agreement to its affiliates or a party that buys it without your consent. There are no third party beneficiaries to this Agreement.

We reserve the right to change the terms of this Agreement and will provide you notice if we do and we agree that changes cannot be retroactive. If you don't agree to these changes, you must stop using the Services.

You agree that the only way to provide us legal notice is at the addresses provided in Section 10.

---

# 8. LinkedIn "DOs" and "DON'Ts."

**8.1. Dos. You agree that you will:**

- Comply with all applicable laws, including, without limitation, privacy laws, intellectual property laws, anti-spam laws, export control laws, tax laws, and regulatory requirements;

- Provide accurate information to us and keep it updated;

- Use your real name on your profile;

- Use the Services in a professional manner.

## 8.2. Don'ts. You agree that you will not:

- Act dishonestly or unprofessionally, including by posting inappropriate, inaccurate, or objectionable content;

- Add content that is not intended for, or inaccurate for, a designated field (e.g. submitting a telephone number in the "title" or any other field, or including telephone numbers, email addresses, street addresses or any personally identifiable information for which there is not a field provided by LinkedIn);

- Use an image that is not your likeness or a head-shot photo for your profile;

- Create a false identity on LinkedIn;

- Misrepresent your current or previous positions and qualifications;

- Misrepresent your affiliations with a person or entity, past or present;

- Misrepresent your identity, including but not limited to the use of a pseudonym;

- Create a Member profile for anyone other than yourself (a real person);

- Invite people you do not know to join your network;

- Use or attempt to use another's account;

- Harass, abuse or harm another person;

- Send spam or other unwelcomed communications to others;

- Scrape or copy profiles and information of others through any means (including crawlers, browser plugins and add-ons, and any other technology or manual work);

- Act in an unlawful, libelous, abusive, obscene, discriminatory or otherwise objectionable manner;

- Disclose information that you do not have the right to disclose (such as confidential information of others (including your employer));

- Violate intellectual property rights of others, including patents, trademarks, trade secrets, copyrights or other proprietary rights;

- Violate the intellectual property or other rights of LinkedIn, including, without limitation, using the word "LinkedIn" or our logos in any business name, email, or URL except as provided in the Brand Guidelines;

- Use LinkedIn invitations to send messages to people who don't know you or who are unlikely to recognize you as a known contact;

- Post any unsolicited or unauthorized advertising, "junk mail," "spam," "chain letters," "pyramid schemes," or any other form of solicitation unauthorized by LinkedIn;

- Send messages to distribution lists, newsgroup aliases, or group aliases;

- Post anything that contains software viruses, worms, or any other harmful code;

- Manipulate identifiers in order to disguise the origin of any message or post transmitted through the Services;

- Create profiles or provide content that promotes escort services or prostitution.

- Creating or operate a pyramid scheme, fraud or other similar practice;

- Copy or use the information, content or data of others available on the Services (except as expressly authorized);

- Copy or use the information, content or data on LinkedIn in connection with a competitive service (as determined by LinkedIn);

- Copy, modify or create derivative works of LinkedIn, the Services or any related technology (except as expressly authorized by LinkedIn);

- Reverse engineer, decompile, disassemble, decipher or otherwise attempt to derive the source code for the Services or any related technology, or any part thereof;

- Imply or state that you are affiliated with or endorsed by LinkedIn without our express consent (e.g., representing yourself as an accredited LinkedIn trainer);

- Rent, lease, loan, trade, sell/re-sell access to the Services or related any information or data;

- Sell, sponsor, or otherwise monetize a LinkedIn Group or any other feature of the Services, without LinkedIn's consent;

- Deep-link to our Services for any purpose other than to promote your profile or a Group on LinkedIn (as set forth in the Brand Guidelines), without LinkedIn's consent;

- Remove any copyright, trademark or other proprietary rights notices contained in or on our Service;

- Remove, cover or obscure any advertisement included on the Services;

- Collect, use, copy, or transfer any information obtained from LinkedIn without the consent of LinkedIn;

- Share or disclose information of others without their express consent;

- Use manual or automated software, devices, scripts robots, other means or processes to access, "scrape," "crawl" or "spider" the Services or any related data or information;

- Use bots or other automated methods to access the Services, add or download contacts, send or redirect messages;

- Monitor the Services' availability, performance or functionality for any competitive purpose;

- Engage in "framing," "mirroring," or otherwise simulating the appearance or function of the Services;

- Access the Services except through the interfaces expressly provided by LinkedIn, such as its mobile applications, linkedin.com and slideshare.net;

- Override any security feature of the Services;

- Interfere with the operation of, or place an unreasonable load on, the Services (e.g., spam, denial of service attack, viruses, gaming algorithms); and/or

- Violate SlideShare's Community Guidelines or, if you're a commercial user of SlideShare, the SlideShare Commercial Terms of Service.

# 9. Complaints Regarding Content

We respect the intellectual property rights of others. We require that information posted by Members be accurate and not in violation of the intellectual property rights or other rights of third parties. We provide a **policy and process** for complaints concerning content posted by our Members.

# 10. How To Contact Us

If you want to send us notices or service of process, please contact us:

ONLINE at: **https://linkedin.com/help/linkedin**

OR BY MAIL at:

**For Members in the United States:**

LinkedIn Corporation

Attn: Agreement Matters (Legal)

1000 West Maude Avenue

SunnyvaleCA94085

USA

**For Members outside the United States:**

LinkedIn Ireland Unlimited Company

Attn: Agreement Matters (Legal)

Wilton Plaza,

Wilton Place,Dublin 2

Ireland

LinkedIn Corporation, Sunnyvale, California, USA, and LinkedIn Ireland Unlimited Company, Dublin, Ireland, October 23, 2014

Close this window
Copyright © 2017, LinkedIn Corporation